THE PENNSYLVANIA COMPANY

*v.*

JOHN H. STOELKE, Admr.

*Filed at Ottawa September 27, 1882.*

1. EVIDENCE—*proof of custom—as bearing on the question of comparative negligence.* In a suit against a railroad company to recover damages for causing the death of the plaintiff's intestate, on the ground of negligence, it appeared that the deceased, at the time of the injury, was engaged in his duty of inspecting cars then standing in a yard kept for that purpose, and was under a standing car, examining the same, which, by being suddenly struck by other cars in motion, caused the injury resulting in his death. It further appeared, the defendant, in taking some of its cars to the yard, there to be left, detached them from the engine propelling them before entering the yard, and suffered the cars, without any brakeman to control their momentum, to enter the yard and strike the cars then standing on the track, and thereby causing the injury. It was also shown that the deceased, who was engaged as car inspector about the yard, placed no signal on the track to notify the switchman or any one else that he was engaged in inspecting the cars, and that no warning was given the deceased, by bell, whistle or otherwise, of the approaching cars. On the trial the defendant asked a witness what the custom was, at the time of the accident, in letting cars into the yard on tracks, and permitting them to run against standing cars, which the court refused to allow: *Held,* that the question was proper, as, if such was the custom, the answer would have aided the jury in determining the degree of care the deceased observed, and whether he was guilty of such negligence on his part as to prevent a recovery.

2. SAME—*construing rule of a railroad company.* A question calling upon a witness to state whether, under a certain rule of a railroad company, there would be any objection to doing a thing a certain way, is not proper, as calling upon the witness to construe the rule, which is not within the domain of verbal evidence.

3. SAME—*as to what constitutes negligence.* In an action based upon alleged negligence of the defendant, it is not allowable to prove by a witness that the act complained of was not negligence, or objectionable. It is for the jury to say, from all the facts and circumstances, whether an act constitutes negligence.

4. INSTRUCTION—*summing up facts on one side only.* An instruction is calculated to mislead, and erroneous, which sums up all or a number of the facts the evidence tends to prove on one side, and omits all on the other, thus impressing on the jury that the facts recited are the only ones that are important in the case.

5. ERROR WILL NOT ALWAYS REVERSE—*giving improper instructions.* Whether a judgment will be reversed because of erroneous instructions, depends upon whether they did, or probably did, mislead the jury to find an erroneous verdict. When it can be seen they did not produce such effect, the judgment will not be reversed, but it will be reversed when the case is not free from doubt.

6. PRACTICE—*instructing jury to find for the defendant.* Where there is evidence tending to show a right of recovery in the plaintiff, the court should not instruct the jury, on all the evidence, to find for the defendant.*

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. WILLARD & DRIGGS, for the appellant.

Mr. JOHN LYLE KING, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee brought an action on the case, in the circuit court of Cook county, to recover for damages claimed to have been sustained through the negligence of the employés of appellant in causing the death of appellee's intestate. The accident occurred in the yards of the Chicago and Alton Railroad Company, situated between Harrison and Van Buren streets. There were eleven or twelve tracks in the yard, connected with the main track by switches, and it connects with most of the railroads in the city. Various companies were accustomed to run their cars into this yard, for the purpose of standing them on these tracks when not in use, and to make up their trains. Such companies used their own engines for the purpose of placing their cars in, and removing them from, the yard. On the approach of a train intended to be placed in the yard, a signal was given to the switchman in charge of the yard, and he opened a switch, and the cars were thrown into the yard on the desired track. He selected the track and admitted the cars. The Chicago

---

* See, also, *Pennsylvania Co.* v. *Conlan,* 101 Ill. 95, and note.

and Alton company had possession and controlled the road, but permitted appellant to stand its cars on its tracks in the yard. On the forenoon of the 10th of October, 1879, the day of the accident, appellant brought two cars for admission to the yard, and, on being signaled, the switchman opened a switch and admitted them, they being driven by an engine of the Pittsburgh, Fort Wayne and Chicago railroad. The momentum they had acquired by the speed at which they were pushed when the engine was detached, drove them with sufficient force to start some cars standing on the track to which the incoming cars were admitted. It was the business of deceased to inspect cars placed on the track,—to see whether they required repairs,—and he was at the time engaged in the performance of his duty, in inspecting the standing cars against which the cars were thrown by the Pittsburgh, Fort Wayne and Chicago engine. He was under the cars, and on their being started he was struck by them, and his neck was broken, and he was killed. He had placed no signal on the track to notify the switchman or any one else that he was engaged in the inspection of these cars. On the approach of the engine no signal was given, by the sound of a whistle or the ringing of a bell, nor does it appear that the incoming cars were under the control of a brakeman. No warning of any kind was given to deceased of the approach of the cars. The switchman had no knowledge that deceased was at or under the cars when he opened the switch to admit the cars when they were thrown on the track.

The jury found a verdict in favor of plaintiff, as administrator of the estate of deceased, and assessed the damages at $3000. A motion for a new trial was overruled, and judgment rendered on the verdict. Defendant thereupon appealed to the Appellate Court for the First District, and on a hearing the judgment of the circuit court was affirmed, and the case is brought to this court on appeal, and a reversal is urged on several grounds.

It is urged that the court erred in rejecting proper evidence offered by appellant, and in giving instructions for appellee. A witness was asked as to what was the custom in letting cars into the yard on tracks, and permitting them to run against standing cars, but the court refused to permit the question to be answered. We can see no objection to this question. It was proper, as, had the answer been that such was the custom, it would have shed light on the question as to what degree of care was observed by deceased at the time of his death. He was constantly employed in the yard, inspecting cars on the track, and if such a custom existed, that fact would have tended to show he knew it; and if he knew it, such evidence would have aided the jury in determining, under all the circumstances, the degree of care he observed, and whether he was guilty of such negligence as to prevent a recovery.

Appellant also propounded a question to a witness, but on objection the court refused to permit it to be answered. The question is this: "State whether, under the rule, there would be any objection in cutting two, three or four cars loose from the engine, and allowing them to run with sufficient momentum to strike against other cars on No. 3." No. 3 was the track on which the cars stood by which the car inspector was killed. There are several serious objections to this question. In the first place, the law, and not the rules of the company, defines negligence. In the next place, it was asking the witness to construe the rule, which was not within the domain of verbal evidence. Again, it was an effort to prove, by this witness, that the act complained of was not negligence. That, as all know, was for the consideration and determination of the jury. There was, therefore, no error in rejecting this evidence.

The giving of this instruction for appellee is urged as error:

"If the jury believe, from the evidence, that the defendant, by its servants, was moving cars into the yard, and improp-

erly, negligently, or without proper care, moved them, either by impelling them with improper or unreasonable momentum, or by uncoupling them from the engine and improperly and wrongfully allowing them to run loose, when so detached from the engine, without any person to brake or control such loose cars, so as, in either case, thereby to cause a forcible concussion between such loose cars and stationary cars on the track, and such concussion caused the immediate death of Frederick Weil, or that the sounding of the whistle or ringing of the bell of the engine moving cars was omitted, and by reason of such omission Weil was taken unawares, and killed by such concussion, then, in case of these circumstances, or either of them, being found, from the evidence, to have existed, and if the jury believe, from the evidence, that such conduct was gross negligence on the part of defendant's servants, the jury should find for the plaintiff, provided the jury should further believe, from the evidence, that Weil, at the time of the concussion and of his death, was performing his proper duty in a proper manner, and without fault on his part."

This form of instruction has been frequently condemned, and numerous judgments reversed because they were given. It is unfair to sum up all of the facts that the evidence tends to prove on one side, and omit all on the other, thus impressing upon the minds of the jury that the facts recited are the only ones that are important in the case. Here, this instruction enumerates a number of facts in favor of appellee, and wholly ignores all facts on the other side. As well have told the jury that the failure to ring the bell and sound the whistle rendered the defendant liable. There are cases in our Reports where judgments have been affirmed notwithstanding similar instructions were given. Other cases, involving other questions, may be found, where the verdict is so clearly right that the judgment would be affirmed however erroneous the instructions. Whether a judgment will be reversed because

of erroneous instructions, must depend upon whether they did, or probably did, mislead the jury to find an erroneous verdict. Where such instructions did not, or can be seen not to have produced that effect, the judgment will not be reversed. There are cases, however, where judgments have been reversed because such instructions as this were given. That will always be done where the case is not free from doubt. In all cases where the evidence seems to be evenly balanced, or it does not clearly preponderate on one side or the other, reason and justice demand that the instructions should be fair, and the law accurately stated, and if not, a reversal must follow. And in this case an examination of the evidence fails to show such a decided preponderance, to say the most for it, as to render it clear that the instruction was harmless.

Counsel for appellant asked the court to instruct the jury, on all the evidence, to find for the defendant. It would, in view of the numerous adjudications of this court, have been error had it been given.

For the error indicated, the judgment of the Appellate Court must be reversed, and the cause remanded.

*Judgment reversed.*