CENTRAL TRUST Co. *et al.*, (BALLOU, Intervenor,) *v.* WABASH, ST. L. & P. RY. Co. *et al.*

*(Circuit Court, S. D. Illinois. 1888.)*

1. MASTER AND SERVANT—NEGLIGENCE OF FELLOW-SERVANTS.
   An expressman and baggageman was killed in a collision, while in the discharge of his duty on defendant's passenger train, through the negligence of the employes of defendant's freight train. *Held,* that they were not fellow-servants.[1]

2. DEATH BY WRONGFUL ACT—DAMAGES.
   Intestate left a widow, but no children or descendants of children. He was about 30 years old; had been earning $55 a month; had been in defendant's employ several years; was temperate, industrious, living with and supporting his wife. He left no estate, and his widow was without means of support. Damages assessed at $4,000.

In Chancery.
*W. P. Black,* for intervenor.
*George B. Burnett,* for receiver.

ALLEN, J. In the matter of the intervening petition of Julia A. Ballou, administratrix, to be allowed damages for the death of her husband, William A. Ballou. On the 16th day of August, 1887, the intervening petition of Julia A. Ballou was filed in this case, for the purpose of obtaining damages for the alleged unlawful killing of her husband by the Wabash, St. Louis & Pacific Railway Company. Subsequently the case was argued before the district judge, and submitted upon the following agreed state of facts:

"It is hereby stipulated and agreed by the parties to this action that a jury be, and the same is hereby, waived, and said cause submitted to the court for determination upon the following stipulation as to facts: That the said Julia A. Ballou was duly appointed administratrix of William A. Ballou by the county court of Vermillion county, Ill., on the 2d day of July, 1887; said county court of Vermillion county having jurisdiction of said proceedings for the making of said appointment. That the said William A. Ballou, deceased, came to his death on the 28th day of October, A. D. 1886, from an injury received in a collision on said Wabash, St. Louis & Pacific Railway, on the date

---

[1] As to who are fellow servants, see Wolcott v. Studebaker, 34 Fed. Rep. 8, and note, McMaster v. Railway Co., (Miss.) 4 South. Rep. 59.

last aforesaid, in the county of Madison, in the state of Illinois; and that said deceased was not guilty, in the matter which resulted in his death, of any negligence or misconduct whatever, nor was he in any measure responsible for the collision in which he was killed.  That the facts in reference to said collision and to employment and position of the deceased are as follows, to-wit: That the deceased was an expressman and baggageman in the employment of the receivers of said Wabash, St. Louis & Pacific Railway, train No. 46, engine No. 1168, which passenger train was at the time running east between Gillham and Edwardsville Junction, in Madison county, Ill., at the rate of about thirty miles per hour.  He was in his car in the performance of his regular duties.  This was about 11:55 at night.  Said passenger train had the right of way upon the track.  Under the rules and regulations of the receivers, it was the duty of the employes in charge of the second section of freight train 77, going west, to side-track and hold said train at Edwardsville Junction, until said passenger train 46 arrived at said station, and passed said freight train; but instead of so doing said freight train was by said servants propelled out upon the main track moving west at the rate of twenty miles an hour, and at some time between 11:45 and 12 o'clock at night met and collided with said passenger train, the result of the collision being the instant killing of said deceased.  Both of said trains were the property of said railroad, being operated by the servants and employes of said receivers, and subject to their control.  Said deceased had no control whatever over the motion or operating of either train, and said collision was occasioned by the negligence of the said servants of the said railway company in charge of the said freight train being upon the main track of the said railroad on the time of said passenger train, which, at the time, had the right to the road, and in violation of the rules and regulations of the receivers of said railway company, as hereinbefore stated.  That said William A. Ballou died intestate, leaving the administratrix, his wife, and no children or descendants of children surviving him.  That at the time of the death of the said William A. Ballou he was about thirty years of age; was then earning $55 per month wages; had been in the employ of the company for several years; was temperate and industrious.  That he left no estate.  That up to the time of his death he was living with his said wife, supporting her, and that she had and has no estate or means of support.  And it is further stipulated that, if there be a finding in this case upon the facts above stipulated in favor of the administratrix, the court shall assess such damages in favor of the intervenor for the pecuniary loss sustained, as in the opinion of the court is warranted by the facts and stipulations and the law."

Under the agreement no issue of fact is presented, but the sole question is whether liability under the law attaches to the receiver of the railway corporation for causing the death of William A. Ballou under the admitted facts and circumstances connected with the killing.  The court is relieved from the examination of any question of contributory negligence, for, according to the stipulations, deceased at the time of his death was on the east-bound passenger train, in the discharge of his duties as expressman and baggageman, and wholly free from any fault whatever.  The liability of the receiver of the railway corporation is denied because of the relation deceased sustained to it at the time of his death; and the court is earnestly asked to apply the rule that the employer is not liable to one servant or laborer for an injury resulting from the carelessness or negligence of another servant or co-laborer.  This rule has undergone many interpretations and expositions in England

and this country, sometimes conflicting; but happily the flexibility of the principles of the common law enables courts generally to adjust the application of the principle in harmony with justice and sound reason. One of the earliest cases announcing the doctrine was decided in England in 1837, (*Priestley* v. *Fowler*, 3 Mees. & W. 1,) and followed in this country in 1842 by the case of *Farwell* v. *Railroad Corp.*, 4 Metc. 49, in which Chief Justice SHAW lays down the rule that "he who engages in the employment of another for the performance of specified duties for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and, in legal contemplation, the compensation is adjusted accordingly. And we are not aware of any principle which should except the perils arising from the carelessness or ignorance of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard, as the master." This statement of the rule is believed to be too broad to well express the law upon the subject as it exists in this country at this time, for it in effect wholly exempts the master from responsibility for any injury resulting from the negligence of any fellow-servant who may be engaged in the same employment. Reference should be had, in determining the liability of the master, to the nature or character of the duties of the servant or agent at the time of the imputed or admitted negligence; and a distinction must be drawn and maintained between a servant or agent with the powers of the principal or master, and one who is simply employed to perform mere executive details. In the former case the agent or servant represents the master, and his negligence is the negligence of the master as fully as though he was personally present, while in the latter a different rule might obtain. The language of CHURCH, C. J., in *Flike* v. *Railroad Co.*, 53 N. Y. 549, sustains this view:

"The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge as master or principal, without regard to the rank or title of the agent intrusted with the performance. As to such acts, the agent occupies the place of the corporation, and the latter should be deemed present, and consequently liable for the manner in which they are performed."

In *Corcoran* v. *Holbrook*, 59 N. Y. 517, *Flike* v. *Railroad Co.*, is fully approved. The supreme court of Illinois, in a recent case, when considering the question as to what was essential to constitute a co-employe, in order that the master might be exempt from liability on account of injuries sustained by one resulting from the negligence of the other, in an able opinion by Chief Justice SCHOLFIELD, held "that ruling requires that the servants of the same master, to be co-employes so as to exempt the master from liability on account of injuries sustained by one resulting from the negligence of the other, shall be directly co-operating with each other in a particular business, *i. e.*, the same line of employment; or that their usual duties shall bring them into habitual association, so that they may exercise a mutual influence upon each other promotive of proper caution. The idea is that the relation between the servants

must be such that each as to the other, by the exercise of ordinary caution, can either prevent or remedy the negligent acts of the other, or protect himself against the consequences; and, of course, where there is no right or opportunity of supervision, or where there is no independent will, and no right or opportunity to take measures to avoid the negligent acts of another without disobedience to the orders of his immediate superior, the doctrine can have no application." *Rolling-Mill Co.* v. *Johnson*, 114 Ill. 57. In *Railroad Co.* v. *Keary*, 3 Ohio St. 201, the supreme court of that state, in discussing the distinction to be made in their relation to the common principal between servants of a corporation exercising no supervision over others engaged with them in the same employment, and agents of the corporation clothed with the control and management of a distinct department, in which their duty is entirely that of direction and superintendence, said:

"For this purpose the conductor is employed, and in this he directly represents the company. They contract for and engage his care and skill. They commission him to exercise that dominion over the operations of the train which essentially pertains to the prerogative of the owner; and in its exercise he stands in the place of the owner, and is in the discharge of a duty, which the owner, as a man, and a party to the contract of service, owes to those placed under him, and whose lives may depend on his fidelity. His will alone controls everything, and it is the will of the owner that his intelligence should be trusted for this purpose. This service is not common to him and the hands placed under him. They have nothing to do with it. His duties and their duties are entirely separate and distinct, although both necessary to produce the result. It is his to command, and others to obey and execute. No service is common that does not admit a common participation, and no servants are fellow-servants when one is placed in control over the other."

The supreme court of the United States in *Railway Co.* v. *Ross*, 112 U. S. 377, 5 Sup. Ct. Rep. 184, and in *Hough* v. *Railway Co.*, 100 U. S. 213, sustain the doctrine laid down in 3 Ohio St. *supra;* and this view seems to be in harmony with authority to be found in the text-books. Mr. Wharton, in his work on the law of negligence, section 232a, observes:

"It has sometimes been said that a corporation is obliged to act always by servants, and that it is unjust to impute to it personal negligence where it is impossible for it to be negligent personally; but if this be true, it would relieve corporations from all liability to servants. The true view is that as corporations can only act through superintending officers, the negligences of those officers, with respect to other servants, are the negligences of the corporations."

In the light of these authorities the contention that the deceased and the conductor and engineer of the freight train were fellow-servants in the sense that would shield the corporation from liability for their gross negligence must be rejected. The employes of the freight train having it in charge represented the corporation at the time of the collision resulting in the death of petitioner's husband, and their admitted negligence I hold to be the negligence of the corporation to the same extent as if it

were a natural person, actually present and superintending the train when the deceased was killed. The damages of intervening petitioner will be assessed at $4,000.