# LAKE ERIE & WESTERN RAILROAD COMPANY

## ·v.

## NANCY MIDDLETON, ADMINISTRATRIX, ETC.

*Master and Servant—Action to Recover Damages for Death of Plaint-
iff's Intestate—Deceased Employed as " Wiper " by Defendant—Killed
While on Engine by Collision with Runaway Freight Train—Negli-
gence of Crew of Freight Train—Whether Fellow-Servants of Deceased
—Improper Remark of Counsel to Jury.*

1.  In an action brought by appellee against appellant to recover dam-
ages for the death of her intestate, who, in his lifetime, was employed
as a " wiper " in defendant's roundhouse and yard, and who was killed
while on an engine in the discharge of his duties, by a collision with a
runaway freight train, this court holds that the evidence supported the
findings by the jury that the deceased was free from negligence, that
the crew of the freight train were incompetent and negligent and that
such incompetence should have been known to defendant, and that such
crew and deceased were not fellow-servants.

2.  An objection to an instruction that stated to the jury that whether
the relation of fellow-servants exists or not is a question of fact to be
determined by the jury from the evidence in the case, under the instruc-
tion of the court, on the ground that the jury might conclude from this
that they were the arbitrary and final judges of that question as one
of fact, is untenable.

3.  Whether employes of the same master are fellow-servants is a
mixed question of law and fact, and when it arises in a trial before a
jury, the duty of the court is to place before the jury a correct legal
definition of the term " fellow-servants," and it is the province of the
jury to determine from the evidence whether the employes come within
that definition.

4.  To constitute fellow-servants, it is essential that they be directly
co-operating with each other at the time of the injury in a particular
business, or that their usual duties be such as to bring them into habitual
consociation, so that each may exercise upon the other a mutual influ-
ence promotive of proper caution.

5.  A remark of counsel for plaintiff to the jury, " How can you go
out and explain to your neighbors and friends if you find a verdict for
this railroad company," was highly improper, but, upon the state of the
evidence, does not require a reversal of the judgment.

[Opinion filed April 11, 1892.]

APPEAL from the Circuit Court of McLean County; the Hon. O. T. REEVES, Judge, presiding.

Messrs. W. E. HACKEDORN and A. E. DEMANGE, for appellant.

Messrs. J. H. ROWELL and THOMAS F. TIPTON, for appellee.

MR. JUSTICE BOGGS. This was a suit brought in the Circuit Court of McLean County by the appellee, as administratrix of the estate of Amos Middleton, deceased, to recover under the statute for the death of the intestate. The deceased was employed in the roundhouse of the appellant company at Bloomington as a "wiper," his duty, in connection with one Oscar Brenner, being to receive the engines of the company coming into the roundhouse upon trains stopping at Bloomington, clean and care for them, provide them with coal and water, and deliver them, fired up and ready for service, to the engineers of outgoing trains. They were also required to make up trains in the yard of the company at Bloomington. This latter duty made it necessary for them to operate an engine on the switches, sidetracks and maintracks of the company in the yard. Brenner was denominated the "hostler" and served as an engineer while Middleton acted as a fireman when running the engine in making up trains. In order to get coal and water they were required to run the engines upon the main track of appellant's road from the roundhouse to the coal shaft and water tank and back, a distance of about a mile. On such trips to and from the water tank and coal shaft and while making up trains they were liable to and at times did pass and repass regular and sometimes special trains passing through Bloomington. Engine No. 40 was to take a freight train east from Bloomington at 4:45 on the morning of the 28th day of August, 1891. It was the custom to use this engine to make up the train, and the deceased and Brenner took it out of the roundhouse to the water tank and coal shaft, supplied it with coal and water, returned with it to the depot and stopped it on the main track near the

depot. Their intention and duty was to do the necessary switching to make up the outgoing train, and they stopped at the depot to get from the agent a list of the cars that were to be put into such train. Middleton was left in the engine while Brenner went for the list. He returned with it, placed it under the cushion of the engineer's seat and then went to a restaurant about 150 feet away, again leaving Middleton at his post upon the engine. Breman left the engine at 3:28 and walked directly to the restaurant and at the moment of arriving there heard the whistle of an incoming train, supposed to be a train due there upon the C. C. C. & St. L. Railroad, but which proved to be a special freight train on appellant's road. The crew of this train had lost control of it and it came down the track at a rate of thirty to forty miles per hour, collided with the engine No. 40, and killed Middleton. A regular train was then due upon the C. C. C. & St. L. Railroad, which stopped at the same depot, but upon another track, but no train was due or expected upon appellant's road. The agent or night operator of the appellant at Bloomington knew from a message which he casually heard passing over the wires, that a special train was on the road, but he was not notified nor did he notify any one of its coming. The collision occurred at 3:30, about two minutes after Brenner left Middleton upon engine No. 40.

The headlight of the engine of the special freight train was not visible from engine No. 40, until such train turned in upon Gridley street, a distance of 600 feet from engine No. 40. The evidence tended strongly to show that the brakemen on this train were not at their posts and that the brakes were not set, and that they lost control of and failed to stop the train by negligence and incompetency. The jury found that they were incompetent and that the appellant company had knowledge of such incompetency or might have known it had they used reasonable diligence and prudence.

One of the counsel for appellee in the closing argument to the jury made the following remark : " How can you go out and explain to your neighbors and friends if you find a

L. E. & W. R. R. Co. v. Middleton.

verdict for this railroad company?" To this the defendant objected and the court overruled the objection.

The jury returned a verdict for the appellee, awarding damages in the sum of $5,000. A motion for a new trial was overruled and judgment rendered upon the verdict. This is an appeal brought to reverse that judgment.

It is first objected that the testimony does not show that the deceased exercised ordinary care for his own safety, and appellant argues that the evidence strongly indicates that he was asleep at the time of the collision, and for that reason failed to move the engine out of the way of the train or to escape from it. The jury in answer to special interrogatories found adversely to this position of the appellant. We think the evidence supports this finding. It appears from the evidence that the headlight of the engine of the special train was not visible to Middleton until it turned in upon Gridley street, a distance of 550 to 600 feet away from him. Its rate of speed would carry it over this distance in about one fourth of a minute. It was proven that Middleton after the train came in sight and before the collision did put his engine in a backward motion and move it twelve to fifteen feet. His body was found upon the floor of the engine cab with his feet upon the steps as though he was endeavoring to leave the engine when killed. Moreover, Brenner left him awake and at his post not more than two minutes before his death. A consideration of these facts would warrant the conclusion that he was awake at his post and used reasonable efforts to remove the engine from danger and to save himself, but failed in both. Nor do we think the jury should have held there was a lack of due care in having the engine upon the main track at the time of the collision. It was necessary to take the engine upon the main track to the coal shaft and water tank, and when returning it was stopped at the depot to obtain from the operator or agent a list of the cars that the deceased and Brenner were to put into the outgoing train which their duty was to make up. No regular train was due to arrive at the depot on appellant's tracks, and no special train

was expected. It is true that the operator had caught from a dispatch passing over the wires through his office, information that a special train was on the road, but he was not notified concerning it or as to time of its arrival, nor did he or any one else notify Brenner or the deceased. Brenner returned to the engine with the switching list, placed it under the cushion of the engineer's seat, and walked to a restaurant 150 feet away, and the collision occurred within two minutes thereafter. There was no reasonable ground to apprehend or anticipate danger to the engine while thus upon the track.

It is not seriously questioned but that appellant's servants in charge of the freight train lost control of it through negligence. The jury further specially found that they were incompetent to perform the duties assigned to them.

If they were negligent and such negligence caused the death of Middleton while he was exercising due care for his safety, the appellant company is liable under our statute to the appellee, unless the deceased and appellant's employes so in charge of the freight train were fellow-servants. The jury in answer to the seventh special interrogatory propounded to them found that such relation did not exist. It is not complained that the instructions of the court defining the term "fellow-servants" were incorrect, but objection is made to the fourth instruction given for the appellee, in which it is stated that "Whether the relation of fellow-servants exists or not is a question of fact to be determined by the jury from the evidence in the case under the instructions of the court." Counsel for the appellant urge that the jury might well have concluded from this instruction that they were "arbitrary and final judges of that question as one purely of fact." We think not. In effect this instruction is that it is for the jury to determine whether the work each of these servants of the appellant was performing, when considered as connected with the work of the others, so associated them together as to constitute them fellow-servants, as that relation was defined in the other instructions of the court. Whether employes of the same master are fel-

low-servants is a mixed question of law and fact, and when it arises in a trial before a jury, the duty of the court is to place before the jury a correct legal definition of the term fellow-servants, and it is the province of the jury to determine from the evidence whether the employes come within that definition.   To this effect, I. & St. L. Railway Co. v. Morganstern, 106 Ill. 216; C. & A. R. R. Co. v. Kelley, 126 Ill. 637.   If the facts concerning the employment, duties and association of those claimed to be fellow-servants are undisputed, then the court should apply the law to the facts and decide the question.   Where, however, there is a conflict of testimony as to such facts, it is the province of a jury to settle such conflict, determine the facts and apply the law as given them by the court, and such finding must stand in an Appellate Court upon the same footing as the finding of a jury upon other disputed questions of fact.

Counsel for the appellant company have favored us with an interesting and able brief and argument in support of the view that the deceased and the conductor, engineer and brakemen of the special freight train were fellow-servants. We have consulted the authorities cited by them and considered all that has been presented in the argument and carefully read the evidence preserved in the record and have arrived at the conclusion that the relation of fellow-servants did not exist between these workmen.   To constitute fellow-servants it is essential that they be directly co-operating with each other at the time of the injury in a particular business or that their usual duties be such as to bring them into habitual consociation, so that each may exercise upon the other a mutual influence promotive of proper caution.   Rolling Mill Co. v. Johnson, 114 Ill. 57; C. & A. R. R. Co. v. Kelley, 127 Ill. 637.   The deceased and Brenner were employed to receive and care for engines in appellant's roundhouse in Bloomington, to operate a switch engine of the appellant (or an engine used for that purpose) upon the main and side tracks of appellant's road in the yard at Bloomington so far as such might be necessary in making up trains to go out from that station; to deliver the engines,

fired up and supplied with coal and water, to the engineer of outgoing trains. This latter duty required that they move the engines upon the main track between the roundhouse and coal shaft and water tank, a distance of about one mile. These duties constituted a particular branch of appellant's business. The negligent servants upon the special freight train had no connection whatever with the deceased as the duties required of him were not to assist or participate in any way in their performance but were engaged in operating a special freight train, an entirely different branch of appellant's business. Nor had the deceased and Brenner, his fellow-servant, any duty to perform in connection with the special freight train. It was to pass through Bloomington but the deceased had no act to perform in furtherance of the special purposes of its passage over the road. It was his duty to use due care in passing and repassing, if in discharging his special duties he had his engine upon the main or side track while it was there. A section foreman having the right to run a hand car upon the tracks or switches would be under like obligation, but such would not constitute him a fellow-servant of the train crew. The deceased and the train crew were not, it seems clear to us, directly co-operating at the time of the injury in a particular business of the appellant, nor do we think the usual duties " of the deceased and the duties of the crew of men temporarily organized for the specific purpose of operating a special freight train one trip over the road were such as to bring them ' into habitual consociation ' " so that each could exercise upon the other an influence promotive of caution. Either such " co-operation " or such " consociation " must exist to create the relation of fellow-servants.

We think the remarks of counsel for the appellee in the closing argument to the jury were highly objectionable. They were calculated to impress the jury with the idea that the public would condemn a verdict for the appellant, and that implied a threat that an explanation would be demanded of them by their neighbors and friends, if they should find such a verdict. The argument of a case is as much a part

of the trial as the hearing of evidence, and the impropriety of attempting to prove the state of public opinion as to the rights of parties litigant is obvious.   To introduce it into an argument is equally reprehensible.

We have, in view of these remarks, not given the findings of the jury that standing upon the questions of fact that under the rules of the law we should otherwise have given them, but have carefully and thoroughly examined the testimony.   Conceding to the appellants all that is claimed by them as being the facts, we are satisfied that the deceased was in the exercise of ordinary care for his own safety; that his death was caused by the negligence of the brakemen upon the freight train, and that the deceased and such brakemen were not fellow-servants.   It is not complained that the damages are excessive.

Such being the case, we ought not to reverse the judgment on the ground that the remarks of counsel were improper.

For the reason indicated, the judgment is affirmed.

*Judgment affirmed.*