Wells v. O'Hare.

---

## A. E. Wells v. Thomas J. O'Hare, Adm'r.

1.   Fellow-Servants—*What the Rule Presupposes.*—The terms of the fellow-servant rule imply and presuppose the existence of such circumstances that the servants can exercise an influence upon each other promotive of proper caution.

2.   Master and Servant—*Phrase " Ordinary Risks or Hazards of Deceased's Employment" Defined.*—The terms, "ordinary risks or hazards

of deceased's employment," mean such risks as are usual and ordinary in such employment after the employer has taken reasonable care to discover and prevent such risks.

3. PRACTICE—*Waiver of Improper Conduct of Counsel.*—Where an attorney during the temporary absence of the trial judge objects to the line of argument of opposing counsel in his closing argument to the jury, but does not take an exception upon the return of the court, nor mention or bring up the matter in any way, his failure in such respect operates as a waiver of the alleged improper conduct.

4. JURORS—*When No Ground of Exception that Against His Objection a Juror Was Rejected by the Court upon Insufficient Grounds.*— It is no ground of exception that against his objection a juror was rejected by the court upon insufficient grounds, unless through rejecting qualified persons, the necessity of accepting others not qualified has been created.

5. SAME—*When the Improper Overruling of a Challenge of a Juror for Cause Will Not Justify a Reversal.*—The improper overruling of a challenge of a juror for cause will not justify a reversal, although the juror is peremptorily challenged, unless the party objecting to him is compelled to exhaust his peremptory challenges on others.

Trespass on the Case.—Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Affirmed. Opinion filed October 9, 1903.

This is an appeal from a judgment in favor of the plaintiff in a suit for the alleged wrongful killing of plaintiff's intestate, Michael Corbett, by a falling brick striking him on the head.

At the time of receiving the injury, Corbett was in the employment of appellant, A. E. Wells, as a common laborer. Wells was a building contractor engaged in the mason and brick work of a nine-story building, located in Chicago. The side walls of the building were completed and the floors laid and tiled up to and including the ninth.

A temporary double hoist running from the ground floor to the ninth floor was in use for the purpose of hoisting up barrows of brick, mortar and other supplies for the masons, also for the purpose of letting down the rubbish and debris that were cleaned up from each floor after the masons had completed their work thereon. It was in the shaft of this double hoistway that Corbett was struck by the falling brick.

The double hoist was the kind of appliance commonly used by builders in this line of employment, consisting of two platforms in the nature of elevator platforms that traveled up and down in a vertical shaft, one platform acting as a counterbalance for the other. When one platform was at the bottom the other platform of the double hoist would be at the top, and as the lower one went up the upper one came down. They were operated by the same cable, passed over the same sheaves at the top and moved by the same steam power. Each platform was suspended by a cable of rope. The appliance could be so adjusted that when it was required to hoist material to the second floor the platforms would ascend no higher than the second floor. As the work progressed to the third floor the appliance could be changed so that the platforms would ascend to that floor, and so on to the succeeding floors.

On the day preceding the accident the masons had completed their work on the eighth floor, and it became necessary to adjust the hoisting appliance to the ninth floor, where they were to commence their work on the day following. One of the platforms was accordingly drawn up to the ninth floor and the matter of shortening the cables attended to, so that thereafter the appliance would be adjusted to run to the ninth floor. In order to shorten the cable, or suspending rope, a plank was put across the shaft at the ninth floor under the platform, or car, and the platform allowed to rest upon that plank while the cable was being shortened, and until the laborers returned the next morning to help take the plank from underneath the platform in question.

While the laborers in the employ of appellant were engaged in taking the plank from under this platform the accident occurred in this way:

Foreman Garrett, the deceased, and one or two other laborers, stepped into the shaft of the double hoist, took hold of the cable, or rope, which came down to the platform at the lower floor, and pulled down on it. The effect of this was to raise the platform or car, at the ninth floor, off

the plank that it was resting on, because the cable they were pulling down on passed over a sheave at the top of the shaft and thence to the platform at the ninth floor which rested on the plank. As they lifted the upper platform from the plank on which it rested, another laborer, by the name of Sullivan, up at the ninth floor, took hold of the end of the plank and pulled it out from underneath the platform.

It was while the plank was being pulled out from under the upper platform that a brick, falling from some point above, struck Corbett's head and killed him.

The night before the accident, Sullivan, in obedience to the foreman's order, went to the elevator to put a plank under it to support it in position while the cables were being changed. He then found that the platform was so high that the plank which he put under the elevator would not rest level unless he blocked it up on the side opposite the platform, being the south side. For that purpose he carried, or told another man to carry, several bricks from the eighth floor to the ninth, and placed them under one end of the plank, thus making it level. The bricks rested on a tile floor which was about level with the beam at the edge of the shaft and were about two feet from its south side. The plank ran north and south. The next morning, without first removing the brick, he went to the north side of the shaft and pulled the plank out from that side.

Sullivan procured and used the bricks of his own accord and without the knowledge of the foreman or any order from him.

No one saw the falling brick until it was within eight feet of Corbett's head, or saw where it fell from, or who caused it to fall or from what point it started to fall. The accident happened at five minutes to seven in the morning, before the regular work of the day had commenced. The only men in the building at the time were Kassar, the engineer, who was on the first floor, the foreman of appellant and laborers working for him, some of whom were on the first floor, others on the ninth.

Sullivan and the deceased were under the same foreman,

Wells v. O'Hare.

lived about half a block apart and sometimes went to and from their work together, but not on this building. The evidence tends to show that the regular work of the deceased while in appellant's employ was tempering mortar, which he did on the ground floor, some fifteen or twenty feet from the elevator shaft. As a rule he had nothing to do with changing the cables. Upon the occasion in question the foreman ordered him and others to "come on and give a pull" at the slack of the cable. So far as appears, this is the only time he did that kind of work.

The declaration consists of one count, and the only allegation of negligence is that "the defendant  *  *  *  carelessly and negligently threw or caused to fall from a great height  *  *  *  a brick down to and upon said deceased."

O. W. DYNES, attorney for appellant.

ALEXANDER SULLIVAN, attorney for appellee; FRANCIS J. WOOLLEY, of counsel.

Where a servant is acting under immediate orders of a foreman, and has no independent will as to taking measures to protect himself, he is not a fellow-servant of another servant who injures him. Rolling Mill Co. v. Johnson, 114 Ill. 57, 64; Wenona Coal Co. v. Holmquist, 152 Ill. 581, 593.

Two servants, though directly co-operating, are not fellow-servants unless their relation be such that they have it in their power to exercise a mutual influence upon each other promotive of proper caution. C. & A. R. R. Co. v. Swan, 176 Ill. 424, 428; Duffy v. Kivilin, 195 Ill. 630, 635; Pittsburg, Ft. Wayne & C. Ry. Co. v. Powers, 74 Ill. 341, 346; Toledo, Wabash & W. Ry. Co. v. O'Connor, 77 Ill. 391, 396; Pagels v. Meyer, 193 Ill. 172, 179.

Objections to argument of counsel are waived, unless pressed by counsel to a decision by the trial court. Marder, Luse & Co. v. Leary, 137 Ill. 319, 323; N. C. St. R. R. Co. v. Southwick, 165 Ill. 494, 495; W. C. St. R. R. Co. v. Annis, 165 Ill. 475, 478; N. C. St. R. R. Co. v. Gillow, 166 Ill. 444, 445; N. C. St. R. R. Co. v. Shreve, 171 Ill. 438, 441.

MR. JUSTICE STEIN delivered the opinion of the court.

First.  There is no direct evidence as to who or what caused the brick to fall, and appellant contends that there is no evidence of any kind tending to show the negligence charged.  At the time of the accident no persons were in the building other than Kassar, the engineer, and appellant's employes.  One of the latter, Sullivan, was engaged on the ninth floor in removing the plank from under the elevator. The others and Kassar were on the first floor.  There was no one on any intermediate floor.  Nothing is shown to have been going on that could have jarred a brick loose anywhere.  The lower cage was resting on the ground and hence failed to counter-balance the other one.  The engineer could not raise the upper cage off the plank by the mere action of the engine.  The cable was slack on the engine drum, and he therefore asked the foreman for help, which the latter supplied by ordering the deceased and others to pull on the cable for the purpose of taking up the slack of the rope, and thus providing a counter-balance.  The engine then slowly raised the upper cage in the air, and having done so, stood still.  The men below were holding the slack of the cable taut on the engine drum, and they were still. Nothing was in motion except above, where Sullivan was pulling at the north end of the plank, the south end of which was resting on the bricks.  Just then a brick fell and struck deceased.  Sullivan had not previously removed the bricks from under the plank.  The jury no doubt concluded that in pulling out the plank he raked with it one of the bricks on the smooth tile floor into the elevator shaft which was only two or three feet off; and we are not prepared to say that they were wrong in such conclusion, and in finding that Sullivan's acts were negligent.

In Slack v. Harris, 200 Ill. 96, the Supreme Court ruled that " positive testimony by an engineer that he did not touch certain nuts upon elevator machinery did not overcome circumstantial evidence that he did."  In the case at bar there is no direct evidence opposed to the circumstantial.

Second.  The terms of the fellow-servant rule imply and pre-suppose the existence of such circumstances that the servants can exercise an influence upon each other promotive of proper caution.  Pagels v. Meyer, 193 Ill. 172, 178, 179; Columbian Exposition v. Lehigh, 196 Ill. 612, 620; C. & A. R. R. Co. v. Swan, 176 Ill. 424; Duffy v. Kivilin, 195 Ill. 630; R. R. Co. v. Powers, 74 Ill. 341, 346; R. R. Co. v. Moranda, 93 Ill. 302, 323; Ry. Co. v. O'Connor, 77 Ill. 391, 396; Rolling Mill Co. v. Johnson, 114 Ill. 57, 64; Wenona Coal Co. v. Holmquist,152 Ill. 581.  In the O'Connor case *supra*, the court say :

" Neither could control the other, or know of his want of skill or prudence so as to report the same to the proper authority for removal, and thus protect himself from injury."

In Pagels v. Meyer, *supra*, it is said :

" The basis of the classification of servants of the same master into those who are fellow-servants and those who are not, as established in this state, is such personal relation and association between them as affords opportunity and power to influence each other to proper caution by counsel, advice and example, or the want of such personal relation and association."

In Mill Co. v. Johnson, *supra*, the court, treating of the same subject, say :

" And of course where there is no right or opportunity of supervision, or where there is no independent will, and no right or opportunity to take measures to avoid the negligent acts of another, without disobedience to the orders of his immediate superiors, the doctrine can have no application."

The Holmquist case, *supra*, affirms a judgment rendered in a suit at the trial of which an instruction was given which used the identical language last quoted.

In view of the law and the undisputed facts of this case, it is, to say the least, a matter of grave doubt whether the deceased and Sullivan were fellow-servants under either branch of the rule.  Sullivan was in charge of the elevator at the top.  He gave the signals for raising and lowering it.

He came into no contact with Corbett, the deceased; Corbett had no occasion to pay any attention to Sullivan. He had nothing to do with any person above, giving signals, or calling out, or with the bells that were rung from above. At the time of the accident Corbett was holding the slack of the cable on the first floor, a thing he had never done before in this building, and Sullivan was pulling the plank on the ninth. There is no proof that he had any idea of what was being done above, or any knowledge that Sullivan or any person was up there pulling a plank, or doing anything else. He was obeying a command of his foreman to pull at the cable. He could not see the top of the shaft, or know what was going on there. The order of the foreman required instantaneous and exact obedience. The reasons why he should pull did not concern him. Without disobeying the order, he had no opportunity to take measures for his safety. He had no independent will, but acted solely at command. Under such circumstances it can not be said the finding of the jury that the relation of fellow-servants did not exist is against the evidence, or is not supported by it.

Third. The giving of the following instruction at the instance of appellee is complained of :

"The jury are instructed that the term ' ordinary risks or hazards of deceased's employment,' as used in these instructions, means such risks as are usual and ordinary in such employment after the employer has taken reasonable care to discover and prevent such risks."

The Supreme Court has so laid down the law during the last few years in a large number of cases, a few of which are : C. & A. R. R. Co. v. House, 172 Ill. 601, 605; A. P. B. Co. v. Hudson, 176 Ill. 273, 274; LaSalle v. Kostka, 190 Ill. 130; C. & G. T. Ry. Co. v. Spurney, 197 Ill. 471, 478; Slack v. Harris, 200 Ill. 96, 108. And such is the rule elsewhere : Buzzell v. Laconia Mfg. Co., 48 Me. 113, 117; Hough v. Ry. Co., 100 U. S. 213, 217.

The instruction speaks of " the terms ' ordinary risk and hazard' as used in these instructions." No other instruction mentioned or referred to " ordinary risk or hazard," and

there was nothing to which the jury could apply the instruction complained of. It was superfluous, but harmless.

Fourth. In his closing argument to the jury, and while the trial judge was temporarily absent, counsel for appellee argued that appellant had not furnished his employe with a safe place to work in, to which appellant's counsel objected on the ground of there being no such proof in the case. Counsel for appellee then asked : "Shall I suspend and wait until the court returns ? " to which appellant's counsel answered : "I do not ask that, but want an exception to the improper line of your argument." He did not, however, take an exception upon the return of the court, nor mention or bring up the matter in any way. His failure in that regard operated as a waiver of the alleged improper conduct. Nor do we think the impropriety, if such it was, to be of a serious nature. As a matter of fact under the proof the place where deceased was killed was not a safe one, even though there was no such allegation of duty in the pleadings. The objection of counsel, however, did not proceed on that ground, but on the ground that there was no such proof. Marder, Luse & Co. v. Leary, 137 Ill. 319; R. R. Co. v. Southwick, 165 Ill. 494; R. R. Co. v. Annis, 165 Ill. 476; R. R. Co. v. Gillow, 166 Ill. 444; R. R. Co. v. Shreve, 171 Ill. 438.

Fifth. A juror tendered by appellant was challenged by appellee for cause. The challenge was sustained, and the juror excused. It does not appear nor is any complaint made that an objectionable juror was forced upon appellant in place of the one excused, or that he did not have a proper and impartial jury. Without examining whether the challenge was well taken, the error, if any, in sustaining it, did no harm.

"No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause, until he has been accepted and sworn. It is enough that it appears that his cause has been tried by an impartial jury. It is no ground of exception that against his objection a juror was rejected by the court upon insufficient grounds, unless,

through rejecting qualified persons, the necessity of accepting others not qualified has been created." 1 Thompson on Trials, Sec. 120.

The improper overruling of a challenge of a juror for cause will not justify a reversal although the juror is peremptorily challenged, unless the party objecting to him is compelled to exhaust his peremptory challenges on others. Robinson v. Randall, 82 Ill. 521. The rule is the same even in a criminal case. Wilson v. People, 94 Ill. 299.

There being no material error in the record, the judgment is affirmed.