## THE WESTVILLE COAL COMPANY

### *v.*

## DANIEL SCHWARTZ.

*Opinion filed December 21, 1898.*

1. APPEALS AND ERRORS—*Appellate Court's judgment is final on question of preponderance.* In suits at law the responsibility for awarding a new trial because the verdict is against the weight of the evidence ends with the Appellate Court, unless there is an entire absence of evidence upon which the verdict could rest.

2. SAME—*Supreme Court does not consider the fact that plaintiff's testimony is contradicted.* In determining the propriety of a refusal of a peremptory instruction for the defendant the Supreme Court can not consider the fact that the plaintiff's testimony was contradicted by various witnesses, including some called in his own behalf.

3. VARIANCE—*objection of variance must be made when question arises at trial.* An objection of variance not raised in any manner upon the trial, being mentioned for the first time in the motion for new trial and in the assignment of error on appeal, comes too late.

4. FELLOW-SERVANTS—*relation not determined solely by position or power of control.* The power of a pit-boss to control the actions of a servant employed to run a cutting machine in a mine is not conclusive that they are not fellow-servants, the question being whether the work in which they were mutually engaged involved the exercise of the former's authority.

5. SAME—*effect of master's assumption of duty incident to servant's employment.* The failure of a pit-boss to discharge the duty of looking after the safety of the roof of a room in a coal mine, which he expressly assumed in order that a servant might give his entire attention to running a cutting machine without stopping to test the roof, as usual, is not the negligence of a fellow-servant but the disregard of an obligation of the master.

*Westville Coal Co. v. Schwartz,* 75 Ill. App. 468, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. BOOKWALTER, Judge, presiding.

W. J. CALHOUN, and H. M. STEELY, for appellant:

Where the evidence does not sustain the verdict it is the duty of the court to set the verdict aside and grant

a new trial. *Railroad Co.* v. *Stumps*, 69 Ill. 409; *Brown* v. *Kragel*, 2 Ill. App. 414; *Clark* v. *People*, 111 Ill. 404.

There can be no recovery where defendant convicts plaintiff of negligence at the time of the accident. *Railroad Co.* v. *O'Conner*, 13 Ill. App. 62.

Even where the evidence is conflicting, if it preponderates strongly in favor of defendant a verdict against it should be set aside. *Janney* v. *Birch*, 58 Ill. 87; *Davenport* v. *Springer*, 63 id. 276; *Schwartz* v. *Lammers*, id. 500; *Railroad Co.* v. *Herring*, 57 id. 59; *Railroad Co.* v. *Troesch*, id. 155.

Where the jury capriciously disregards the testimony a new trial should be granted. *Railroad Co.* v. *Stumps*, 69 Ill. 409; *Insurance Co.* v. *Johnson*, 77 id. 598.

The plaintiff must recover, if at all, upon the particular negligence charged in his declaration. *Railroad Co.* v. *Hawk*, 36 Ill. App. 331; *Railway Co.* v. *Cotton*, 41 id. 314; *Railway Co.* v. *Coble*, 113 Ill. 119; *Railway Co.* v. *Bell*, 112 id. 365; *Stearns* v. *Reidy*, 135 id. 122; *Trunkey* v. *Hedstrom*, 131 id. 209.

The first duty of one to prevent injury is to use due care and caution for his own safety. *Railway Co.* v. *McGrath*, 115 Ill. 174.

One whose loss or injury is the result of his own negligence must bear it. *Railroad Co.* v. *Warner*, 123 Ill. 45; *Blanchard* v. *Railway Co.* 126 id. 419; *Railway Co.* v. *Hunt*, 18 Ill. App. 288; *Kallbom* v. *Lipp*, 20 id. 416.

One who necessarily and voluntarily places himself in a known place of danger and is injured cannot recover. *Abend* v. *Railroad Co.* 111 Ill. 208.

In an action to recover for a personal injury no recovery can be had unless the evidence shows that the person injured used and exercised ordinary care to avoid the injury. *Railway Co.* v. *Ouska*, 151 Ill. 232; *Hawk* v. *Railroad Co.* 147 id. 399; *Railway Co.* v. *Hessions*, 150 id. 546.

Counsel have a right to require the court to give an instruction as asked, where it is in conformity with the law. *State* v. *Wilson*, 2 Scam. 225; *Hays* v. *Borders*, 1 Gilm. 46; *Railroad Co.* v. *Jacobs*, 20 Ill. 778.

Where two parts of an instruction relating to the vital point in issue conflict, the instruction is erroneous. *Railway Co.* v. *Larmon,* 67 Ill. 69.

It is error to blend separate propositions of law in one instruction. *Railroad Co.* v. *Johnson,* 103 Ill. 512.

Where the court amends or gives an instruction on his own motion, he must take care that it correctly declares the law. *Morgan* v. *Peet,* 32 Ill. 281.

Where an instruction is in conformity with law, based on the evidence, and presents a view of the case that may be controlling, and which is not covered by any other instruction, a refusal to give it will cause a reversal of the case. *Bennett* v. *Connelly,* 103 Ill. 50; *State* v. *Wilson,* 2 Scam. 225; *Cohen* v. *Schick,* 6 Ill. App. 280; *Railroad Co.* v. *Warren,* 108 Ill. 538.

Where there is a conflict it is essential that all the instructions should be accurate, clear and perspicuous, and in such case an erroneous instruction is not cured by one on the same side or on the other side stating the law correctly. *Stearns* v. *Reidy,* 18 Ill. App. 582; *Railway Co.* v. *Henks,* 91 Ill. 407; *Cushman* v. *Cogswell,* 86 id. 62; *Railway Co.* v. *Dimick,* 96 id. 42; *Railway Co.* v. *O'Brien,* 18 Ill. App. 28; *Sinnett* v. *Bowman,* 151 Ill. 147; *Railroad Co.* v. *Harwood,* 80 id. 88; *Hoopeston* v. *Eads,* 32 Ill. App. 75; *Smith* v. *People,* 142 Ill. 118.

WILL BECKWITH, and F. E. SHOPP, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On December 21, 1896, appellant, the Westville Coal Company, was operating a coal mine containing two hundred rooms, in which it used seven machines run by electricity to cut under the coal, which was afterward thrown down by blasting and then loaded and taken from the mine. Each machine was ordinarily run by what was called a "machine runner" and his helper, and it was

moved from room to room as required. Each room was prepared for the machine by two men, who were called the "rock-gang," who took down all loose rock from the roof and cleared a floor space of twelve to fourteen feet from the face of the wall. The machine was then brought into the room and a cutting commenced from one side. The machine was fastened by what were called jacks, one of which was set in a hole in the roof, to operate as a brace and hold the machine. The machine would cut under the coal about three and one-half feet wide and would run back about seven feet. After a cut or run was completed the machine was moved over and another cutting made, until it had gone across the room along the face of the wall in that way. It was then removed to another room and the process repeated. On said night the appellee, Daniel Schwartz, was in the employ of appellant as a machine runner, and by direction of the night boss operated a machine with another machine runner, Thomas Fitzpatrick. They did the cutting in one room, after which the machine was moved to room No. 10. They made eighteen cuts across the face of the wall and turned the machine and made two or three along the side, when a rock fell from the roof upon the appellee while he was bending over, oiling the machine. He brought this suit against appellant charging it with liability for his injury and recovered a verdict for $1000, upon which judgment was entered, and the Appellate Court has affirmed the judgment.

At the close of the evidence offered by plaintiff, and again at the close of all the evidence, the defendant asked the court to give a peremptory instruction to the jury to return a verdict of not guilty. This the court refused to do, and the refusal is assigned as error. There were seven counts in the declaration, charging various acts and omissions as negligence, but the only evidence tending to support a cause of action was the testimony of the plaintiff himself, that on the night in question, by an express

agreement, the defendant assumed the responsibility and duty of looking after the roof and keeping it in a safe condition. Plaintiff admitted, and the evidence was conclusive, that in the absence of such an agreement it was his duty to look after the roof and to protect himself from that source of danger. It was the duty of the rock-gang to see that the room was put in proper condition to take the machine into it; but these roofs were treacherous, and there was no certainty that they would remain safe for any length of time after being left by the rock-gang. It was the uniform practice, and the duty of the men who ran a machine when it was taken into a room, to test the roof by a sounding with picks to see that it was safe, and to repeat such examination at proper intervals for slips and loosened rocks, which were liable to be found at any time. The safety of the men required such examination, and it was a sure method of protecting themselves from danger. The space cleared for the machine, which was twelve or fourteen feet wide, could not be obstructed by props or timbers to support the roof, but must be left clear. The machine ran with much noise and a great deal of jar, and, being braced against the roof, was likely to loosen and throw down rocks. It seems that in a neighboring mine a record of seventy-five runs with one of these machines, in a shift of ten hours, had been made, while the average in this mine was somewhere about twenty-five or thirty runs, and the highest that had been made was about fifty in the same time. An attempt was to be made on this night by plaintiff and Fitzpatrick, under some sort of understanding, to beat the record of the neighboring mine with a larger number of runs. Plaintiff's testimony was that the boss or night foreman told them that on that night they need not look after the loading of the machine, the setting of the bits or the roof, and that he would look after the roof. There is no dispute, and could be none under the evidence, of the proposition that in the absence of the alleged agreement by the fore-

man the duty which was neglected on this occasion was the duty of the plaintiff himself, and not of his employer, the defendant. On the other hand, it was within the scope of the foreman's authority to assume, on behalf of defendant, for that occasion, the duty of looking after the roof while the men gave their undivided attention to making the highest possible speed with the machine. This assumption of duty plaintiff testified to, and his testimony was sufficient to support the verdict, so far as that question is concerned. The argument that the jury were not justified in crediting his statement because he was not corroborated but was contradicted by three witnesses, two of whom were examined on the subject in his own behalf, does not present the question of a want of evidence on the part of plaintiff, but rather that there was a clear preponderance on the other side. That question does not arise upon a motion for a peremptory instruction, but is a question submitted to the court upon the motion for a new trial, and to the Appellate Court. If a verdict is against a clear weight of the evidence, it is the duty of the trial court to grant a new trial, and the Appellate Court may for a like reason reverse the judgment and award a new trial, but the responsibility for the determination of such question ends with the Appellate Court, and we have no power to re-examine it.

It is further urged that if the duty of looking after the roof had been assumed and neglected, with injurious consequences to the plaintiff, yet the evidence clearly shows that plaintiff was guilty of negligence, because he knew that the duty was not being performed and continued his work with such knowledge. He had been in this room No. 10 about two hours, and there had been, so far as appears, no inspection of the roof. But he testified that he and Fitzpatrick had no time to look after the roof while endeavoring to make so many runs, and gave no attention to that subject. The machine ran with a great deal of dirt, noise and jar, and the number of runs

made shows that they were making a desperate effort to do a great amount of work. The average had been twenty-five or thirty runs in ten hours, and on this occasion they had made thirty runs in about three hours. It is a fair inference that they were giving the machine their constant attention, and it does not necessarily follow, from anything appearing in the case, that they knew no one had observed the condition of the roof during that time. We do not think it can be said that the evidence was conclusive that plaintiff's attention was drawn to the fact that the duty of inspection was being neglected.

It is also insisted that there was a variance between the pleadings and the proofs as to each count of the declaration. But the record does not show that this question was raised in any manner upon the trial. In order to raise that question it must be presented in some appropriate way to the trial court, so that it may be passed upon and there may be an opportunity of amendment. The point is mentioned in the motion for a new trial and in the assignments of error in the Appellate Court and this court, but it comes too late after the trial. *Libby, McNeill & Libby* v. *Scherman,* 146 Ill. 540.

Several objections were made to the action of the court in passing upon the instructions, but we do not find any prejudicial error therein. It may be said of the instructions, generally, that they were not carefully adapted to the question before the jury, and perhaps some confusion has arisen out of that fact. There was some question about the keeping of a record book, and other things which were not connected in any way with plaintiff's injury and could have had no influence in the decision of the case. The neglect of the duty by whomsoever was charged with it, and the consequent injury, were not in question, and the only questions before the jury were whether the duty of inspection and care of the roof was assumed by the defendant's foreman, and whether plaintiff was in the exercise of ordinary care for his own safety.

The instructions, both those given and refused, related to numerous other questions. One of them, asked by the defendant, told the jury that the master was not liable for an injury caused by the negligence of a fellow-servant, and the court added, "but a pit-boss and an employee under him are not fellow-servants," and gave the instruction in that form. This modification was wrong, both for the reason that ordinarily the question whether the servants of a common master are fellow-servants is one of fact, to be determined by the jury under instructions defining the relation, (and under the evidence it would be such a question in this case,) and also because a pit-boss and employee under him might or might not be fellow-servants as to particular acts or duties, according to the circumstances. The superior position of the pit-boss, and the fact that he had the power to control and direct the plaintiff, would not determine the question. (Cooley on Torts, 562.) It appears from the evidence that on some occasions, at least, the pit-boss performed the same duties as plaintiff, and during this evening he took plaintiff's place and ran the machine while plaintiff went to lunch. While he would not be a fellow-servant with respect to the exercise of power over the plaintiff with which he was clothed, he might, under other circumstances, hold the relation of fellow-servant. (*Chicago and Alton Railroad Co.* v. *May*, 108 Ill. 288.) But this instruction could have had no influence in the decision of the case, since there was no question of liability or exemption from liability arising out of that relation. If the duty of looking after the roof was assumed by the foreman, it was on behalf of the defendant as employer, and the failure to discharge it was not the negligence of a fellow-servant, but the disregard of an obligation of the defendant to the plaintiff.

The defendant offered five instructions stating that certain conditions of fact would bar a recovery. They ignored the material and principal question in the case whether the defendant, through its foreman, promised

the plaintiff to look after the roof so as to exempt him from the discharge of that duty, and the court added to each a modification embracing the omitted feature. The modification was correct, for the reason that the facts stated in the instructions would not bar a recovery if the duty was assumed as claimed.

There are some other minor criticisms which it is not necessary to discuss at length. All that was good in refused instructions applicable to the case was contained in those which were given. The twenty-seventh instruction asked by the defendant, and given, was a fair and reasonable statement of the rule of law, and sufficient for the presentation to the jury of defendant's claim.

The judgment is affirmed.        *Judgment affirmed.*