AUGUST LINQUIST, Defendant in Error, vs. STEWART
HODGES, Plaintiff in Error.

*Opinion filed February 25, 1911.*

1. PLEADING—*recovery may be had against one defendant although declaration alleges joint negligence.* The rule in actions of tort is different from that in actions upon contract, and in an action of tort under a declaration charging two .or more defendants with jointly 'injuring the plaintiff there may be a verdict and recovery against one, only, of the defendants, and it is immaterial that he remains charged, in the declaration, with joint negligence.

2. SAME—*question of variance must be raised in trial court— what is merely a variance.* The fact that the verdict in an action of tort is against one defendant, only, whereas the declaration charges him and other defendants with joint negligence, amounts, at most, to a mere variance between the declaration and the proofs, which, to be taken advantage of on appeal, should be raised in the trial court by an objection to the evidence which points out the variance complained of.

3. SAME—*when declaration need not charge defendant with notice.* A declaration which charges the defendant with negligent construction of the appliance or object which caused the injury, such as a wall of a building, need not allege that the defendant had notice of such defective construction, as he is bound to know of defective conditions which he created himself.

4. SAME—*what is a sufficient averment that defendant had notice.* An averment in a declaration that the defendant, by his servants, laid the bricks in a wall in a negligent manner is a sufficient averment that the defendant had notice of the negligent manner in which the bricks were laid.

5. SAME—*failure to aver notice is cured by verdict.* Failure of a declaration in a personal injury case to allege notice by the defendant of the defective condition which caused the plaintiff's injury is cured by verdict.

6. NEGLIGENCE—*when question whether a defendant was guilty of negligence charged is for the jury.* Where the evidence shows the manner in which the brick face of a wall was constructed, the amount of overhang at the base and the top, the absence of anchoring of the bricks and the fall of the wall with no force applied other' than gravity, it is for the jury to say whether the wall was constructed in a negligent manner and whether it fell in consequence thereof.

7. MASTER AND SERVANT—*independent contractor defined.* An independent contractor is one who agrees to do a specific piece of

work, furnishing and paying his own help and executing the work entirely according to his own ideas or in accordance with a plan previously furnished him, without being subject to the orders of the person for whom the work is done as to the details thereof.

8. Same—*when relation of master and servant exists.* Where a firm is employed by a contractor to superintend the construction of a building and is authorized to hire men and pay them with money furnished by such contractor, the men so hired are not servants of the firm but of the contractor.

9. Fellow-servants—*the question whether parties are fellow-servants is ordinarily one of fact.* The question whether servants of a common master are fellow-servants within the meaning of the law is ordinarily one of fact, and can become one of law only when the facts are not in dispute and all reasonable men would readily agree as to the conclusions which should be drawn from such facts.

10. Same—*fellow-servant rule stated.* In order to constitute servants of the same master fellow-servants it is necessary that they be directly co-operating with each other in a particular business in the same line of employment, or their duties must be such as to bring them into habitual association, so that they may exercise an influence upon each other promotive of proper caution.

11. Same—*indirect co-operation is not sufficient to create relation of fellow-servants.* To create the relation of fellow-servants under the first branch of the fellow-servant rule, which relates to co-operation, there must be direct co-operation in the particular business of the master, and not merely indirect co-operation in his general business.

12. Same—*when question whether carpenters and bricklayers were fellow-servants is for jury.* Whether carpenters and bricklayers working for the same master but under different foremen, and engaged in erecting a brick and re-enforced concrete building, were fellow-servants under the second branch of the fellow-servant rule is a question for the jury, even though they were closely associated in certain portions of the work, where there is ground for reasonable difference of opinion whether, under the evidence, their association was such that they must have had an opportunity to exercise an influence upon each other promotive of proper caution.

13. Same—*what is required under the second branch of fellow-servant rule.* To constitute servants of the same master fellow-servants under the second branch of the fellow-servant rule their duties must be such as to bring them into habitual association, and they must be brought into such relation towards each other that they may exercise an influence upon each other promotive of proper caution for their safety.

Cartwright, J., dissenting.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. WILLIAM H. McSURELY, Judge, presiding.

FRANK M. COX, and R. J. FELLINGHAM, (FYFFE & ADCOCK, of counsel,) for plaintiff in error.

GEORGE E. GORMAN, and McGOORTY & POLLOCK, for defendant in error.

Mr. JUSTICE HAND delivered the opinion of the court:

This was an action on the case, commenced in the superior court of Cook county by August Linquist, defendant in error, against Stewart Hodges, plaintiff in error, and several other defendants, to recover damages for a personal injury alleged to have been sustained by the plaintiff while he was in the employ of the defendants. The declaration was amended and the general issue was pleaded. When the case was called for trial the plaintiff dismissed as to all the defendants except Stewart Hodges and took leave to amend his declaration, but the declaration was never amended. A trial resulted in a verdict and judgment against the defendant Stewart Hodges for $6000, which has been affirmed by the Appellate Court for the First District, and the record has been removed into this court for further review by writ of *certiorari.*

The declaration upon which the cause was tried contained five counts. The first count averred that on August 8, 1906, the defendants, Peter Heer, the Banker's Security Company and Stewart Hodges, with Rodman Brown, I. Warren Brown and Emmett M. Read as superintendents of construction, were constructing a building on the corner of two certain highways in the city of Chicago, known as Sheffield and Fullerton avenues; that plaintiff was working for and under the supervision of defendants as a carpenter; that it was the duty of defendants to use reasonable care

for the safety of the plaintiff while he was at work; that
the defendants neglected their duty in that behalf, and that
certain servants of the defendants, who were not fellow-
servants of the plaintiff, negligently and carelessly placed
certain bricks over the main entrance in such a position and
with so much overhang or extension beyond the face of the
wall that the same were caused to fall by the force of grav-
ity; that the defendants Rodman Brown, I. Warren Brown
and Emmett M. Read, doing business as Brown & Read,
who were then acting as superintendents, in the exercise
of reasonable care would have known that the bricks were
laid in a negligent manner and in consequence would fall,
and negligently and carelessly permitted and allowed them
to be so laid; that while plaintiff was on the sidewalk di-
rectly in front of the main entrance of said building, in the
exercise of all due care for his own safety, a large part of
said bricks fell upon and against him by reason of the neg-
ligence of the defendants, and he was injured in and about
the head, body and limbs, internally and externally, and the
muscles and ligaments of his body were torn, bruised and
lacerated, and he received a great nervous shock from which
he will never recover; that he suffered great pain and in-
convenience in body and mind; that he will in the future
be permanently hindered from transacting his affairs and
business, and thereby became liable for large sums of money
in and about endeavoring to be healed. The second, third,
fourth and fifth counts of the declaration are the same as
the first, with the exception of the negligent acts of the de-
fendants which, it was averred, caused the plaintiff to be
injured. The second count averred that the defendants,
through their servants, who were not fellow-servants of
the plaintiff, negligently and carelessly placed and laid in
position certain bricks over the main entrance to said build-
ing, said negligence consisting in this: that in laying said
bricks the same were all laid lengthwise, with the greater
length of the bricks parallel with the face of the wall, in-

stead of the first course being laid with what is known as a "header." The third count charged the defendants with negligence in this: that the mortar used in laying the bricks and holding the same together was used in too great quantity, thereby causing said bricks to be insecure in their places. The fourth count charged the defendants with negligence in this: that they failed and neglected to employ reasonably competent men to lay the bricks; and the fifth count charged the defendants with negligence in this: that the bricks over the front door, which fell, were laid with too great an overhang, the lower course of which was laid with the greater length parallel with the face of the wall instead of at right angles with said wall. It is conceded that there was no evidence to support the fourth count of the declaration, and it need not be considered.

It is first contended that the first, second, third and fifth counts of the declaration do not state a cause of action against the plaintiff in error,—first, because those counts alleged a joint liability against all of the defendants named in those counts of the declaration; and secondly, because those counts of the declaration do not aver that the plaintiff in error had notice of the negligent manner in which the bricks which fell and injured the defendant in error were laid. We do not agree with those contentions. If those averments of the declaration be eliminated from each of the counts which refer to those defendants who were dismissed out of the case, by disregarding such averments as surplusage, there clearly remains sufficient in each of the counts of the declaration to state a good cause of action against the plaintiff in error, and the fact that the plaintiff in error remained charged, jointly with the defendants who were dismissed out of the case, with having committed the negligent acts which caused the injury to the defendant in error is wholly immaterial, as in an action of tort under a declaration charging two or more defendants with jointly injuring a plaintiff there may be a verdict and recovery

against one, only, of the defendants, the rule in this regard being different in actions of tort from what it is in actions upon contract.

In *Lasher* v. *Littell,* 202 Ill. 551, Littell sued G. Lasher, Francis Savage and John Johnson, jointly with the appellant, for malicious prosecution. The case was dismissed as to G. Lasher and Savage, and Johnson was not served, and judgment was rendered against the appellant for $1500. On appeal to this court it was contended that, the appellee having averred in his declaration that the appellant conspired with G. Lasher, Savage and Johnson, there could be no recovery against him alone. The court, on page 555, said: "In actions for malicious prosecutions, as in most other actions of tort, persons jointly engaged in the acts complained of may be united as defendants or sued severally in separate suits until plaintiff's claim is barred by the satisfaction of a judgment in his favor. (13 Ency. of Pl. & Pr. p. 427.) The case was dismissed as to G. Lasher and Francis W. Savage, and John Johnson was not served. The court did not err in proceeding with the trial of the case as against the appellant.—*Davis* v. *Taylor,* 41 Ill. 405; *Illinois Central Railroad Co.* v. *Foulks,* 191 id. 57."

In *Postal Telegraph-Cable Co.* v. *Likes,* 225 Ill. 249, on page 265, it was said: "It is next contended that the court erred in entering judgment against the appellant alone upon a declaration charging joint negligence and upon a verdict finding joint liability. This question has been heretofore decided by this court adversely to appellant's contention. In *Davis* v. *Taylor,* 41 Ill. 405, it was held that taking a judgment against a portion of the defendants amounts to a dismissal of the case as to the residue, and that in actions *ex delicto* this may be done because there is no contribution among wrongdoers, and that if the mode of doing it is irregular, it is an irregularity which works no prejudice to those defendants against whom the judgment is taken."

In *Pierson* v. *Lyon & Healy,* 243 Ill. 370, the concurrent negligence of the appellant and the city of Chicago was charged to be the proximate cause of appellee's injury. On the trial of the case the city of Chicago was found not guilty, and it was urged that the finding of the city not guilty was equivalent to a finding that the negligence charged in the declaration was not proved. The court, on page 375, said: "We do not think the rule invoked by appellant is applicable to the declaration in this case. It is true, negligence is alleged against both appellant and the city of Chicago, who were made joint defendants. In *Indianapolis and St. Louis Railroad Co.* v. *Hackethal,* 72 Ill. 612, it was held unnecessary in actions of tort against several defendants to prove a joint liability in order to justify a recovery; that if the guilt of any one of the defendants of the negligence charged in the declaration was proven a recovery could be had as to such defendant."

At most, there was only a variance between the averments of the declaration and the proofs, and the question of variance was not raised in the trial court. In *Swift & Co.* v. *Rutkowski,* 182 Ill. 18, this court held that the rule is well settled that a party desiring to take advantage of a variance between the declaration and the proofs should object to the evidence when offered and point out wherein the variance consists, so that the other party may amend his declaration and thus avoid the objection, and if this course is not pursued the objection will be waived. *Westville Coal Co.* v. *Schwartz,* 177 Ill. 272; *Swift & Co.* v. *Madden,* 165 id. 41.

It is also well settled in this State that where a party is charged with the negligent construction of the appliance or object which causes an injury, he is bound to know, from the fact that he was the author of the appliance or object, its condition, and it is not necessary to aver or prove actual notice of such condition. In *Alexander* v. *Town of Mt. Sterling,* 71 Ill. 366, it was said, on page 369: "They,

248 — 32

being the projectors of them and the builders of them, are, in law, held to a knowledge of their original condition. It would be absurd to say they must have notice of the original defect when they themselves are the authors of the defect." In *Chicago and Eastern Illinois Railroad Co. v. Hines,* 132 Ill. 161, at page 168, it was said: "All accountable persons know what they do or do not do, and it is obviously no more necessary to allege that a corporation knows what it has done or has not done than it is to allege the same thing with regard to an individual, for the acts or non-acts of the servants of the corporation, within the sphere of their duty, are its acts or non-acts." The declaration in this case averred that plaintiff in error, through his servants, negligently laid said bricks. We think this, in effect, was an averment that plaintiff in error had knowledge of the negligent manner in which said bricks were laid. (*Village of Jefferson v. Chapman,* 127 Ill. 438; *Sargent Co. v. Baublis,* 215 id. 428; *Grace & Hyde Co. v. Sanborn,* 225 id. 138.) We think, however, if it was necessary to aver notice of the defect by the plaintiff in error and the want of such averment would have been a good objection to the declaration had the sufficiency of the declaration been challenged by a demurrer, that the defect was such that it could be and was cured by verdict. (*Sargent Co. v. Baublis, supra; Postal Telegraph-Cable Co. v. Likes, supra.*) In the *Baublis case,* on page 434, this court said: "The objection here considered would have been good on demurrer, but it has several times been held that a failure to aver notice is cured by verdict. In the case of *City of East Dubuque v. Burhyte,* 173 Ill. 553, it was decided that a failure to aver, in the declaration, notice to the city of the defective and dangerous condition of a sidewalk was cured by the verdict. A failure of the declaration to allege notice to the defendant of a defect in a smokestack was held in *Boyce v. Tallerman,* 183 Ill. 115, to have been cured by verdict; and in *Ide v. Fratcher,* 194 Ill. 552, a declaration which

failed to aver that the servant did not know that an emery wheel was cracked and defective was considered sufficient after verdict."

The first, second, third and fifth counts of the declaration were sufficient, after verdict, to support the judgment.

It is next contended that the evidence does not show that plaintiff in error was guilty of the negligence charged in the declaration. The building which the plaintiff in error was constructing was one hundred and twenty feet long and sixty feet deep and was to be four stories high, and fronted upon Fullerton avenue. The front wall, facing upon Fullerton avenue, was faced with pressed brick and was eighteen feet high at the time the accident occurred. There was an opening in the front wall thirteen feet wide for the main entrance of the building from Fullerton avenue, and sixteen feet above the ground this space was spanned by a concrete lintel. On this lintel as a base, two bricklayers were engaged in laying the pressed brick face of the wall. The bricks were eight inches long, two and a quarter inches thick and four inches in width. Six courses of bricks were laid before the accident occurred. All the bricks in each course were laid with the long way of the bricks parallel with the lintel. The first course of bricks was laid an inch and a half beyond the outer edge of the lintel. The second, third, fourth and fifth courses were laid directly above the first course and the sixth course projected an inch beyond the face of the fifth course, making a projection of two and a half inches outside of the front side of the lintel, which left a base of only one and a half inches upon the lintel to carry six courses of bricks. The wall thus laid was thirteen feet long and four inches thick, with an overhang of an inch and a half at the base and a further overhang of an inch at the top of the fifth course. It was not backed up or anchored in any way, and the bricks were laid, not in mortar, but in black putty. The wall had been built up six courses and the bricks for the seventh course

were piled upon the wall, when, with no force applied to the wall other than that of the force of gravity, the twelve feet of wall crumbled and fell upon the defendant in error, who in the discharge of his duties was upon the sidewalk beneath the wall. In determining the question whether the trial court should have taken the case from the jury we cannot weigh the evidence, but if the evidence most favorable to the defendant in error, with all the legitimate conclusions which may be drawn therefrom, fairly tends to support the case of plaintiff as laid in his declaration, we are required to hold, as a matter of law, that it was the duty of the trial court to submit the case to the jury. While it was necessary for the plaintiff to establish the negligence averred in his declaration or some count thereof, negligence may be inferred from the proven or admitted facts in some instances. The jury had before it the facts above set forth, and we are unable to say, as a matter of law, that they were not justified in concluding therefrom, in the light of their common knowledge and experience as men, that the wall fell by reason of the negligent manner in which it had been constructed.

It is also urged that Brown & Read were independent contractors, and that by reason of that fact the plaintiff in error was not liable to the defendant in error for the injury he received by reason of the negligence of the bricklayers in constructing said wall, as they were in the employ of Brown & Read and not in the employ of the plaintiff in error. The arrangement between the plaintiff in error and Brown & Read whereby Brown & Read were to superintend the mason, concrete and carpenter work upon said building is evidenced by the following agreement:

"Agreement dated June 1, 1906, between Stewart Hodges and Rodman Brown and Emmett M. Read; consideration one dollar.

"(1) Said Stewart Hodges does hereby employ Rodman M. Brown and Emmett M. Read to superintend the mason, concrete and carpenter work for the four-story and basement fire-proof factory building, including boiler and engine house and dry kiln, in

process of erection at the corner of Sheffield and Fullerton avenues, Chicago, for the Eugene Dietzgen Company.

"(2)  Said Stewart Hodges does hereby lease from said Brown & Read all tools and equipment necessary for the completion of the work on the said building.

"(3)  Said Brown & Read agree to devote all their time from June 1, 1906, to the date of completion of said work on said building in carrying on said work upon said building according to instructions of said Hodges, and said Brown & Read agree to lease all tools and equipment necessary for the completion of said work to said Hodges.

"(4)  Said Hodges agrees to pay for the services of said Brown & Read and for the leasing of tools and equipment necessary to carry on the work the sum of $23 per day until completion of building, provided that said Brown & Read shall not receive any compensation for services rendered after August 1, 1906, if work on said factory building is not before that time completed. The payment for said services and rental of equipment to be made when work is completed and accepted by Eugene Dietzgen Company.

"(5)  If work should be completed before August 1, 1906, then Brown & Read shall receive $23 per day for each day there remains between the date of completion of said work and the first day of August."

This agreement was signed and sealed by Stewart Hodges, Rodman Brown and Emmett M. Read. The evidence tends to show that Brown assembled the materials used in the building and Read employed Sutherland, the carpenter foreman, and also the defendant in error, who was assistant carpenter foreman; that he also employed Hoffner as foreman of the bricklayers; that Sutherland employed the carpenters and Hoffner employed the bricklayers, and that Brown & Read paid the men who worked on the building with the money furnished by the plaintiff in error. In *Hale* v. *Johnson,* 80 Ill. 185, it was said: "One who contracts to do a specific piece of work, furnishing his own assistants and executing the work either entirely in accordance with his own ideas or in accordance with a plan previously given to him by the person for whom the work is done, without being subject to the orders of the latter in respect to the details of the work, is clearly a contractor and not a servant." This definition of an independent

contractor was approved in *Whitney & Starrette Co.* v. *O'Rourke,* 172 Ill. 177, in which case it was held one engaged in the construction of a building who employs and pays the laborers himself, without being under the control of the owner of the building, is an independent contractor, though he is paid, as his compensation, a percentage on the cost of erection. In this case Brown & Read were employed to superintend the mason, concrete and carpenter work on said building according to instructions of' said Hodges, and Hodges furnished the material, and the workmen were paid by Brown & Read with the money of Hodges. We think it clear, therefore, that there was evidence in the record which fairly tended to prove the relation of independent contractors did not exist between Hodges and Brown & Read, but that Brown & Read were superintendents of construction, just as the written contract says they were, and that when they employed the defendant in error they employed him for Hodges, the result of which was to create the relation of master and servant between Hodges and the defendant in error.

It is next contended that the relation of fellow-servants existed between the defendant in error and the workmen who were laying the brick wall which fell and injured the defendant in error, and that, conceding the bricklayers to have been negligent in constructing said wall, the negligence of such workmen, by reason of such relation, cannot be imputed to the plaintiff in error. The question whether servants of a common master are fellow-servants within the meaning of the law is usually a question of fact. If, however, the facts are not in dispute and all reasonable men would readily agree as to the conclusions which should be drawn from the admitted facts, the question whether the relation of fellow-servants exists in a given case becomes a question of law. *Lake Erie and Western Railroad Co.* v. *Middleton,* 142 Ill. 550; *Mobile and Ohio Railroad Co.* v. *Massey,* 152 id. 144; *Louisville, Evansville and St. Louis*

*Railroad Co.* v. *Hawthorn,* 147 id. 226; *Chicago and Alton Railroad Co.* v. *House,* 172 id. 601; *Chicago and Alton Railroad Co.* v. *Swan,* 176 id. 424; *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll,* 176 id. 330; *Norton Bros.* v. *Nadebok,* 190 id. 595.

The outside walls of the building where defendant in error was at work when he was injured were being constructed of brick, and the remainder of the building, including the floors, partitions, columns and girders, were of re-enforced concrete. The workmen engaged about the building were bricklayers, carpenters and common laborers. The bricklayers worked upon the outer walls, only, while the carpenters worked outside of and in all parts of the building, and the laborers assisted the bricklayers and carpenters and mixed the concrete and poured it into the forms made by the carpenters. There were from fifteen to thirty carpenters and from ten to fifteen bricklayers. The carpenters made forms by sawing and nailing together boards into boxes of different sizes, according to the pieces of concrete to be made, which were filled with concrete. The floors were of concrete re-enforced with iron, and the carpenters made the forms for the floors. The ends of the girders which supported the floors rested upon the outside walls. The walls of the building contained a large number of windows, about twenty-two on each floor. The window sills were of cut stone, the frames of wood and the tops of concrete. The carpenters made the forms and set them in place and the bricklayers bricked up around them, and in so doing the carpenters and bricklayers were often close together.

In order to constitute servants of the same master fellow-servants, it is necessary that they should be directly co-operating with each other in a particular business in the same line of employment or that their duties be such as to bring them into habitual association so that they may exercise a mutual influence upon each other promotive of proper caution. (*Chicago and Northwestern Railroad Co.*

v. *Moranda,* 93 Ill. 302.) The case does not seem to have been tried upon ,the theory that the defendant in error and the workmen who laid the bricks which fell and injured the defendant in error were fellow-servants within the first branch of the rule, but rather upon the theory that the relation was such as to make them fellow-servants within the second branch of the rule, and it would seem clear they could not, as a matter of law, be brought within the first branch of the rule, which requires that servants within this feature of the rule "must be directly co-operating with each other in a particular business as distinguished from indirect co-operation in the general business of the master," (*Lyons* v. *Ryerson & Sons,* 242 Ill. 409,) and which would not, generally or necessarily and as a matter of law, create the relation of fellow-servants between all servants of a common master engaged in erecting or repairing a large building or other similar enterprise. While such relation might exist, ordinarily the facts involved would be so numerous and so complicated as to require the submission of that question to a jury, and as to that feature of the case we think such must be the rule in the case at bar. As to whether the defendant in error, as a matter of law, sustained such relation to the bricklayers who caused his injury, under the second branch of the rule, is not so clear. That branch of the rule requires, first, that the duties of the servants be such as to bring them into habitual association; and secondly, they must be brought into such relation towards each other that they may exercise a mutual influence upon each other promotive of proper caution for the safety of each other. While it seems clear in this case that the bricklayers and carpenters, as a class, were quite closely associated with each other in one branch of this work, viz., that of setting the ends of the floor girders in the outer walls and in placing in position the window frames, and to that extent it might be said they were habitually associated together, we are unable to see how it can be said, as a mat-

ter of law, that it appears beyond doubt or dispute that the relation between those two classes of workmen was so intimate in association that they must have had an opportunity to exercise a mutual influence upon each other promotive of proper caution. They were under different foremen, they belonged to different trades, were performing a different class of work and had no direct control over each other, and we think it cannot be held, as a matter of law, that either of said classes of workmen, by reason of their association with the other class, as shown by the evidence, would necessarily have an influence upon the other which would cause the one class voluntarily to perform their work in such a manner as would necessarily be promotive of that proper caution which would afford protection to the other class while they performed the work in which they were engaged. The question whether the relation of the two classes was so intimate as to be promotive of caution for the safety of each other can only arise in this case as an inference or conclusion from the evidence, about which all men might not agree,—at least there is reasonable cause for doubt on this question,—and upon that question we are of the opinion the defendant in error had the right to have the case go to the jury. We think this view is supported by the following cases: *North Chicago Rolling Mill Co.* v. *Johnson,* 114 Ill. 57; *Frost Manf. Co.* v. *Smith,* 197 id. 253; *Chicago and Alton Railroad Co.* v. *Wise,* 206 id. 453; *Leighton & Howard Steel Co.* v. *Snell,* 217 id. 152; *Lyons* v. *Ryerson & Sons, supra; Bennett* v. *Chicago City Railway Co.* 243 Ill. 420. We think the court did not err in submitting the question whether the relation of fellow-servants existed between the defendant in error and the bricklayers through whose negligence he was injured, to the jury.

The parties have discussed other questions in the briefs filed in this cause. We are of the opinion, however, no re-

versible error has been made to appear in this record and the judgment of the Appellate Court should be affirmed.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. Justice Cartwright, dissenting.