MAX LOESCHER, Defendant in Error, *vs.* THE CONSOLI-
DATED COAL COMPANY, Plaintiff in Error.

*Opinion filed June 18, 1913.*

1. NEGLIGENCE—*when the question of fellow-servants is not in-volved.* Where the boss in a coal mine, after directing a miner to go into a certain entry with a car to bring out some dirt, gives orders that a water car be left temporarily on the track of the main entry at a point so close to the junction of the track into the entry where the miner had gone that the latter, in coming out of the en-try with his car, is injured in his effort to avoid a collision with the water car, the negligence, under such circumstances, lies with the mine boss and no question of fellow-servants is involved.

2. SAME—*it is for the jury to say whether a person confronted with sudden danger acted with reasonable care.* It is ordinarily for the jury to determine whether a person confronted with sud-den peril acted as a reasonable man would have acted under the same circumstances in attempting to extricate himself from his perilous position.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the City Court of East St. Louis; the Hon. M. MILLARD, Judge, presiding.

WISE, KEEFE & WHEELER, (MASTIN & SHERLOCK, of counsel,) for plaintiff in error.

WEBB & WEBB, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Defendant in error brought this suit against plaintiff in error in the city court of East St. Louis to recover damages for injuries alleged to have been sustained by him while in the latter's employ in its coal mine in Macoupin county. The trial resulted in a verdict of $5000, on which judg-ment was rendered. On appeal the Appellate Court for the Fourth District required a *remittitur* of $1500 and af-firmed the judgment of the lower court. The case has been brought here on petition for *certiorari.*

The alleged injury occurred on the night of December 17, 1910. Defendant in error was a driver in the coal mine on the night in question, and was directed by the night boss to remove certain dirt from what is called the "first west on the north entry." There was in that mine what was called the "main north entry," running north from the shaft bottom, with two railroad. tracks laid therein,—one called the "empty track" and the other the "loaded track." Some distance north of the shaft bottom an entry called the "first west" branched off, having a track leading into it by a switch from the main north entry. On the occasion in question defendant in error took two cars to which he hitched a mule by means of a chain, and with four other men proceeded to the place in the first west entry where he had been directed by the night boss, Powell, to load the cars with dirt. He used no lines but controlled the mule by speaking to it. After the cars were loaded defendant in error drove out of the entry, riding on the front end of the first car, three of the men who assisted him riding on the second car and the other on the first car. As they went down the grade from the west entry he "spragged" some of the wheels with pieces of wood, to slacken the speed of the cars. As the west north entry nears the junction with the main north entry there is a short curve in the track. As the defendant in error came around the curve he saw a light giving him a flagging signal ten or fifteen feet in front of him. He immediately called "whoa" to the mule, which was then going at a fast walk. As the mule did not stop he jumped off of the car, and at the same time the mule turned around, in the same direction, and shoved defendant in error down in such a way that his left hand was caught under one of the wheels and crushed in such a manner that he lost the first finger at the second joint, the second finger entirely, while the third finger was broken at the first joint and remains stiff. The wrist was also injured in such a way as to become stiff.

The evidence tends to show that a water car, used for sprinkling the tracks and entries, was standing on the track in the north entry not far from the entrance to the west entry. It was not there at the time defendant in error went into the west entry. The man who flagged defendant in error's cars was ten or fifteen feet north of the water car at the time he gave the signal. Defendant in error testified he did not see the water car at the time he jumped, but only the signal. There is also some evidence tending to show that about three minutes before the accident the night boss had been told that an empty car stood on the track in the north entry, which prevented the water car from passing, and that he gave directions to switch the empty car into the east entry. In the meantime the water car was left standing near the mouth of the west entry, and apparently just after switching the empty car the accident occurred. The night boss was still at or near that point and saw defendant in error's cars come down out of the west entry and saw the flagging signal given.

It is first contended that the proof does not show that the master knew, or by the exercise of reasonable care could have known, that the water car was on the track in such a way as to cause the accident; that the night boss was never closer to it than sixty or seventy feet. With this we cannot agree. The evidence on this question justified submitting the case to the jury.

It is next urged that the injury was caused by the negligence of a fellow-servant. The weight of the evidence tended to show that defendant in error had gone into the first west entry with his cars by the direction of the night boss, Powell, who was vice-principal of plaintiff in error, and that the moving of the water car and the empty car at the point of the accident was done under Powell's direction. The water car was left in a place where it was dangerous, while it remained there, to anyone who came out of the west entry on a car. With Powell's knowledge of

the situation it cannot be said that reasonable care on his part did not require that he should see that the men operating the water car should place it further away from the junction of the tracks, where there would have been no danger of a collision with the cars of defendant in error. This being true, there is no question of fellow-servant in this record. Furthermore, if that question were in the record we do not think this court would be justified in holding, on the proof, under the rule laid down by this court as to fellow-servants, that the men who were in charge of and moving the water car were fellow-servants of defendant in error. *Linquist* v. *Hodges,* 248 Ill. 491; *Chicago and Northwestern Railroad Co.* v. *Moranda,* 93 id. 302.

Plaintiff in error further argues that defendant in error was guilty of contributory negligence in jumping from the car when he did. When a person is confronted with a sudden peril he cannot be expected to act with the same degree of caution and presence of mind as one who has full opportunity for the exercise of his judgment. Ordinarily it rests with the jury to say whether he acted with sufficient promptness and with such care for his personal safety in extricating himself from the danger in question as a reasonable man should have used under the circumstances. (*Asmossen* v. *Swift & Co.* 243 Ill. 93; *Wesley City Coal Co.* v. *Healer,* 84 id. 126.) On this record the question of the contributory negligence of defendant in error was properly submitted to the jury.

Plaintiff in error contends that the court erred in refusing three instructions which it requested. Two of these instructions, so far as they properly covered the care and prudence required by defendant in error in jumping from the car, were substantially covered by two other instructions given by the court at the request of plaintiff in error. The third instruction was properly refused, as it was in conflict with the uncontradicted testimony that the water

car in question was by Powell's direction placed where it was standing at the time of the accident.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*