## Charles F. Hoobler, Appellee, v. Frank B. Voelpel, Appellant.

### Gen. No. 7,789.

1. DIRECTING VERDICT AND DEMURRERS TO EVIDENCE—*when variance between proof and declaration does not warrant.* The court rightly refuses to direct a verdict in a tort action on the ground of variance between proof and declaration where no objection had been made to the evidence on such ground at the trial.

2. SAVING QUESTIONS FOR REVIEW—*necessity of moving for directed verdict at close of all evidence.* A defendant in a tort action cannot complain on appeal of the court's overruling his motion for a directed verdict on the ground of variance between proof and declaration when he fails to renew his motion at the close of all the evidence.

3. HIGHWAYS AND STREETS—*negligence in accident as jury question.* Sharply conflicting evidence as to the location of a collision of an automobile with a pedestrian, the speed of defendant's car and the care of the plaintiff makes a jury question of whether plaintiff exercised due care and whether defendant was guilty of negligence which was the proximate cause of the injury.

4. HIGHWAYS AND STREETS—*due care of injured ordinance violator as jury question.* The jury has the right to decide whether one injured by an automobile running against him exercised due care in crossing a street at a point contrary to ordinance.

5. HIGHWAYS AND STREETS—*when recovery for injury from automobile not barred by ordinance violation.* A plaintiff is not barred from recovery for injuries from an automobile by his crossing a street where not allowed by ordinance if his act did not proximately contribute to the accident.

6. DAMAGES—*$3,000 as not excessive for personal injuries.* Three thousand dollars is not excessive damages for the breaking of his collar

bone and of two ribs and a permanent heart enlargement resulting from an automobile striking a postal clerk who was earning $175 monthly with $15 to $20 extra in December and whose expenses as a result of his injuries amounted to some $425.

7. DAMAGES—*employment of help as element of.* A plaintiff in a suit to recover for personal injuries from being run against by an automobile. may be allowed as damages the cost of extra help in his home made necessary by his injuries.

8. DAMAGES—*not mitigated by another's payments to injured party.* Payments by the government to a postal clerk during the time he could not work due to injuries received from an automobile running upon him and which he swore were for accumulated sick leave and vacations, could not be used to lessen the damages he should receive from the automobile owner.

Appeal by defendant from the Circuit Court of Peoria county; the Hon. JOSEPH E. DAILY, Judge, presiding. Heard in this court at the April, term, 1927. Affirmed. Opinion filed September 27, 1927. Rehearing denied November 8, 1927.

EAGLETON & EAGLETON, for appellant.

TODD, MORGAN, PENDARVIS & ARBER, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

On December 8, 1925, appellee, while attempting to cross Main Street in the City of Peoria, at or near its intersection with Monroe Avenue, was struck by an automobile driven by appellant, and received the injuries for which this suit was brought. The suit as originally instituted was against appellant and his employer, the Joyce-Laughlin Company. Main Street runs in a northwesterly and southeasterly direction through said city, and Monroe Avenue crosses it at right angles. On the trial it was stipulated that for the purposes of the trial, Main Street would be referred to as an east and west street, and Monroe Avenue as a north and south street. Two sets of streetcar tracks run along Main Street, one for the eastbound and one for the westbound travel.

Hoobler v: Voelpel, 246 Ill. App. 69.

The declaration consists of two counts. In the first count appellee avers that just prior to and at the time of said collision he was crossing Main Street at its intersection with Monroe Avenue. In the second count he charges that at said time he was walking on Main Street. Both counts aver due care on the part of appellee, and that the said Joyce-Laughlin Company by its agent, and appellee, then and there so negligently and carelessly drove, operated and managed said motor vehicle that by reason thereof the same was caused to run against and strike appellee, alleging damages, etc. The second count also charges the operation of said automobile at a rate of speed greater than was reasonable and proper, having regard to the traffic and use of the way.

To said declaration the Joyce-Laughlin Company filed a plea of the general issue and pleas setting forth that the act complained of was the sole act of appellant. Appellant filed a plea of the general issue and a plea denying joint liability. At the close of appellee's evidence, the court directed the jury to return a verdict of not guilty as to the Joyce-Laughlin Company. Thereupon appellant moved the court to instruct the jury to find him not guilty, which motion was denied. A verdict was returned finding appellant guilty and assessing the appellee's damages at $3,000, upon which verdict judgment was rendered. To reverse said judgment, this appeal is prosecuted.

It is contended by appellant that the court erred in not directing a verdict in his favor at the close of the evidence, because of variance between the proof and the declaration.

No objection was made on the trial to the evidence on the ground of variance. This being a tort action the court did not err in said ruling. *Swift & Co. v. Rutkowski*, 182 Ill. 18; *Westville Coal Co. v. Schwartz*, 177 Ill. 272; *Swift & Co. v. Madden*, 165 Ill. 41; *Illinois Cent. R. Co. v. Foulks*, 191 Ill. 57–69–71; *Postal Telegraph-Cable Co. v. Likes*, 225 Ill. 249–265.

It might also be observed that appellant's motion for a directed verdict was made and denied at the close of appellee's evidence. The motion was not renewed at the close of all the evidence, and appellant is therefore not in a position to complain of this ruling. *Langan v. Enos Fire Escape Co.,* 233 Ill. 308–312; *Reavely v. Harris,* 239 Ill. 526–528; *Wolf Co. v. Monarch Refrigerating Co.,* 252 Ill. 491–501.

The principal ground relied on by appellant for a reversal of said judgment is that the verdict is against the manifest weight of the evidence, it being the contention of counsel that the evidence fails to prove due care on the part of appellee, and also fails to prove negligence on the part of appellant.

The testimony of appellee and of his witnesses, with reference to what occurred just prior to and at the time of said collision, the speed of appellant's car, etc., is in substance as follows:

Appellee, who is an employee of the post office in said city, testified that about 5:45 p. m. on the day in question, he left the post office, and that when he got to the Peoria Drug Store, at the northwest corner of the intersection of said streets, "there was a line of cars going up Main Street between the street car track and the curb, and I had to wait for an interval in the line. As soon as I saw I had room to cross the street I started to cross; that is, south, across Main Street. I proceeded across and parallel with Monroe Street in the regular foot crossing." He was then asked: "Where were you when you first saw the car that struck you?" He answered: "In the car track." He further testified: "The car was going up Main Street west, coming toward me. I then proceeded straight across the street. When I was struck I was right in the center of the two car tracks. I saw this car coming and I went right across as fast as I could. After I was struck I do not know what happened. * * * In my judgment the car approaching me was coming at

least twenty-five miles an hour; no warning was sounded by the driver of the car.''

Simon Fern, a witness on behalf of appellee, corroborated appellee with reference to the line traveled by appellee in crossing said street, and as to the speed of appellant's automobile.

Mrs. L. A. Bross testified on behalf of appellee that she, with her husband, was in an automobile proceeding south on Monroe Street; that she ''saw the car that was being driven by Frank Voelpel just prior to the accident. Voelpel's car was about the middle of the street car tracks. We were approximately halfway across Monroe Street on Main Street. The Voelpel car came around our car. It passed our car right in the middle of Monroe Street. I was attracted to the car because it swerved out in the street in the beginning and attracted my attention because it acted so peculiar, and the next thing I saw was the man's body fly in the street.''

L. A. Bross, husband of the above-named witness, testified: ''I saw a Ford coupe cut around me. At that time I was about halfway across Monroe on Main, going up Main. My car was about three feet from the outside rail. I was driving my car at that time ten or twelve miles an hour. The Ford coupe was going a whole lot faster than me in order to cut around me, possibly twice as fast as I was.''

David Schaffer testified he was standing in front of his store at 602 Main Street, ''getting ready to go home. A nephew of mine that was here yesterday hollered out loud and I looked around and saw Hoobler turn around about two or three times. I did not see the car strike him. I saw him roll a couple or three times, that is, somersault. * * * I did not see the car (appellant's) moving. I noticed a slide mark on the pavement, I judge about eighteen feet.''

The evidence on the part of appellant and his witnesses tended to show that said collision took place

some 40 or 50 feet west of the west line of Monroe Avenue at its intersection with Main Street, and that appellant's car was being operated at a speed of from six to ten miles per hour. Appellant testified that he proceeded up Main Street "and as I was crossing the intersection   *   *   *   the first thing that was called to my attention was the fact that I was about to hit a man, and tried to prevent hitting him by turning to the right; that was above the intersection I should judge fifty feet.   *   *   *   There were two cars parked. One parked in the proper parking space along Main Street and the other car double parked, and I proceeded across the intersection, and turning out to avoid the double parked car, found it necessary to drive around it. It was at that time in pulling around the double parked car that I first saw the man that I struck.   *   *   *   When I first saw Hoobler, he was right at the front end of the double parked car.   *   *   *   He was so near the front end of that car that it was impossible for me to see him in time to avoid striking him.   *   *   *   In attempting to avoid striking him, I turned to my right and tried to stop, shut off the gas and used the brakes.   *   *   *   My car was traveling I would say eight or ten miles an hour."

A Mrs. Lindensfelser, who was riding with appellant, testified: "I would say that the accident occurred   *   *   *, between sixty and seventy feet west of the pedestrians' sidewalk crossing of Main and Monroe Street on the west side of Monroe. After we had crossed Monroe Street we met those cars double parked and Mr. Voelpel turned to his left to pass them,   *   *   *   the car that was double parked was just a little to the front of us when Mr. Hoobler came out directly in front of that car, directly in front of Mr. Voelpel's car.   *   *   *   and he (appellant) applied his brake and I would say that car didn't move over a car's length after he saw Hoobler.   *   *   *   Hoobler was going diagonally down Main Street. That would be

east on Main. He did not look toward our car before the impact. He did not hasten his speed while Voelpel was trying to stop his car and avoid the accident. * * * The car traveled about a car length after the impact." This witness also testified "that * * * appellant's car was being operated at from six to ten miles per hour."

Bert L. Church, a witness for appellant, testified: "The first I noticed was the man (appellee) was just finishing his roll on the ground, and the car that hit him was in the act of stopping, and hadn't moved over a foot when I saw him. * * * The back end of the Voelpel car might have been anywhere between forty-five to sixty-five feet west of the west sidewalk line of Monroe Street crossing Main Street." This witness also testified that on that same evening, after appellee was taken to the hospital, the witness inquired of appellee "if he was cutting diagonally across the street off the intersection, and he said that he did not remember, that he might have, as he sometimes did that."

This, in substance, was the testimony with reference to how said collision occurred, the line traveled by appellee in crossing Main Street just prior to and at the time of said collision, and the speed at which appellant's car was being operated at said time, etc. Appellant offered in evidence an ordinance of said city, section 25 of which provided that "In the congested district pedestrians crossing any street must do so in the most direct line from curb to curb, or where lines are designated, or painted by the police department, or Commissioner of Public Works, pedestrians must keep within said lines, going to and from curb to curb, and must not cross diagonally or obliquely, or cross any street except on a cross walk." It was stipulated on the trial that the intersection here in question "is a very busy corner, and in the business district of the city of Peoria."

The evidence as to the location of said collision, the speed of appellant's car and the due care of appellee was sharply conflicting.

It was therefore a question for the jury, as to whether appellee was in the exercise of due care, and as to whether appellant was guilty of negligence which was the proximate cause of the collision and injury to appellee. We are of the opinion and hold that the jury were warranted in their finding, and that the verdict was not against the manifest weight of the evidence.

Even though, as contended by appellant, appellee was crossing said street diagonally and not on the direct line of travel, in violation of said ordinance, it is still a question for the jury as to whether at said time he was in the exercise of due care for his own safety.

In *Lerette v. Director General of Railroads,* 306 Ill. 348, the court at page 352 says:

"Violation of a law at the time of an accident by one connected with it is usually evidence of negligence, but there remains a question of fact whether the illegal act is the proximate cause of the injury. The mere fact that plaintiff was violating a law at the time he was injured ought not to bar his right to recover any more than the fact that defendant was violating a law at the time plaintiff was injured ought to conclusively establish plaintiff's right to recover. Where the defense is that plaintiff's unlawful conduct at the time of the accident was the proximate cause of the accident, the difficult question presented for determination is whether the unlawful conduct was a direct and proximate cause contributing, with others, to the injury or whether it was a mere condition of it. The mere fact that plaintiff was violating the law at the time he was injured will not bar his right to recover unless the unlawful act in some way proximately contributed to the accident in which he was injured. (*Star Brewery Co. v. Hauck,* 222 Ill. 348; *Graham v. Hagmann,* 270

id. 252; *Ensley Mercantile Co. v. Otwell,* 142 Ala. 575, 4 Ann. Cas. 512; *Munroe v. Hartford Street Railway Co.,* 76 Conn. 201, 56 Atl. 498.)"

It is also contended by appellant that the verdict of the jury is excessive. The testimony discloses that appellee was rendered unconscious; that he suffered a fracture of the left collar bone and of the fifth and sixth ribs on the left side, over the region of the heart, with numerous bruises on different parts of the body. The doctor who attended appellee testified, among other things, that "his heart action was irregular and his heart was enlarged. In my opinion he will not recover from this irregular heart action. I think that is a permanent condition."

Appellee was confined in the hospital 15 days and was away from his work on account of the injury six weeks lacking one day. He was earning $175 per month in his position as postal clerk, and during the month of December, on account of the holiday trade, he would earn from $15 to $20 additional, for extra work. His doctor bill was $75, hospital bill $103, and he suffered damages to his clothing and effects amounting to $50.50. He further testified that by reason of this injury he was compelled to employ extra help in the home, which cost him $200.

In *North Chicago St. R. Co. v. Zeiger,* 182 Ill. 9, in discussing a question of similar character, the court at page 12 says:

"The expense necessarily incurred by a plaintiff so disabled, in procuring competent help in his business to do the work which would have been performed by himself had he not been disabled, was a proper subject of allowance for damages in this character of suit. *Ashcraft v. Chapman,* 38 Conn. 230."

Under the holding in this case the court did not err in admitting evidence as to the employment of such help.

The evidence also discloses that appellee received pay from the post office for the time in which he was away on account of said injury. He insisted, however, and offered evidence to the effect that he was allowed a certain time for vacation each year, and also for sick leave, and that if he did not use his sick leave one year, which was ten days each year, it carried over to the next, and that in receiving his pay as he did, it exhausted six weeks of his accumulated sick leave and vacation periods.

In *Consolidated Coal Co. of St. Louis v. Shepherd,* 112 Ill. App. 458, the court at page 461 says: "The testimony offered by defendant, that plaintiff received money of an accident association during disability, was properly excluded by the court. It had no legitimate bearing as evidence either in defense or rebuttal. *Cox v. City of Chicago,* 83 Ill. App. 540."

In *Cox v. City of Chicago, supra,* the court at page 542 says: "At the time of his injury appellant was carrying an accident insurance policy. Appellee was allowed to prove, against the objection of appellant, that the insurance company paid to appellant $150 on account of his injury. * * * The admission of such testimony * * * are clearly erroneous unless waived or cured by stipulations or admissions."

"There is a conflict of authority as to whether the right of the injured party to recover for loss of time is affected by the fact that his employer has continued to pay him his wages or salary during his disability. On this question the general and more reasonable rule is that the gratuitous payment in such case will not preclude a recovery for such loss of time, on the theory that the wrongdoer can have no concern with the transaction between the employer and the employee, and the amount so paid is not to be regarded, under the circumstances, as in any sense compensation for lost time but rather as a gratuity given by one to the other out of relations of friendship or sympathy between

them. And so it is held that amounts so paid, regardless of whether they are paid pursuant to contract or as a gratuity, cannot operate to reduce the damages recoverable against a tortfeasor.'' 8 R. C. L. p. 556, sec. 107; *Nashville, C. & St. L. R. Co. v. Miller,* 120 Ga. 453; *Illinois Cent. R. Co. v. Porter,* 117 Tenn. 13. Appellant should not be permitted to take advantage of the contract under which appellee was employed to mitigate the damages caused by his act.

We are of the opinion and hold that the damages are not excessive.

No complaint is made of the rulings of the court on the instructions.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

*Judgment affirmed.*